IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CSMN OPERATIONS LLC., CSMN OPERATIONS II LLC., EDWARDS MEDICAL PROVIDER GROUP LLC., and PERRY SNAVELY, SARA SHRIVER, ASHLEY SAGRAVES, MICHELLE TAYLOR, CYNTHIA THOMAS, ASHLEY TURNQUIST, ZACHARY MARTIN, JOHN HAMM, CONNOR SCHMITT, NICHOLAS LINTON, and TIFFANI WOLF,

Plaintiffs,

vs.

AETNA LIFE INSURANCE COMPANY, AGMA HEALTH FUND, AMAZON.COM SERVICES LLC GROUP HEALTH AND WELFARE PLAN, VERINT SYSTEMS INC. COMPREHENSIVE WELFARE BENEFIT PLAN PLAN, VIRTU FINANCIAL OPERATING LLC HEALTH PLAN, BOSTON CONSULTING GROUP, INC. WELFARE BENEFITS PLAN, DELL INC. RETIREE MEDICAL PLAN, CVS HEALTH WELFARE BENEFIT PLAN, QUEST DIAGNOSISTICS GROUP WELFARE PLAN, MASON TENDER'S DISTRICT COUNCIL WELFARE FUND PLAN, ALASKACARE DEFINED BENEFIT PLAN, GROUP MEDICAL BENEFITS FOR ACTIVE EMPLOYEES PLAN, TRUIST FINANCIAL HEALTH PLAN, BANK OF AMERICA GROUP BENEFIT PROGRAM PLAN, HAVAS NORTH AMERICA WELFARE BENEFIT PLAN, SYNEOS HEALTH EMPLOYEE WELFARE PLAN, CSX CORPORATION MEDICAL, DENTAL, AND VISION PLAN, APPLE INC. HEALTH AND WELFARE BENEFIT PLAN,

TELADOC HEALTH INC. HEALTH AND WELFARE BENEFIT PLAN, IAC INC. HEALTH AND WELFARE BENEFIT PLAN, DEUTSCHE BANK MEDICAL PLAN, HOLTHOUSE CARLIN AND VAN TRIGT LLP WELFARE BENEFIT PLAN, DELOITTE LLP GROUP INSURANCE PLAN, SAP AMERICA HEALTH AND WELFARE PLAN, STANFORD HEALTH CARE EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN, CARVANA LLC HEALTH AND WELFARE PLAN, ALASKA ELECTRICAL HEALTH AND WELFARE PLAN, and OPEN CHOICE WITH AETNA HEALTHFUND PLAN,

Defendants,

---

**SECOND AMENDED COMPLAINT**

---

Plaintiffs CSMN Operations LLC doing business as All Points North Lodge, CSMN Operations II LLC, Edwards Medical Provider Group LLC, (collectively "APN Plaintiffs"), and Perry Snavely a/k/a Patient 29, Sara Shriver a/k/a Patient 27, Ashley Sagraves a/k/a Patient 22, Michelle Taylor a/k/a Patient 31, Cynthia Thomas a/k/a Patient 32, Ashley Turnquist a/k/a Patient 34, Zachary Martin a/k/a Patient 16, John Hamm a/k/a Patient 8, Connor Schmitt, a/k/a Patient 25, Nicholas Linton a/k/a Patient 14, and Tiffani Wolf a/k/a Patient 37 (collectively, "Patient Plaintiffs"),[1] through their undersigned counsel, complain and allege against Defendants

[1] In accordance with the Court's Order on the motions to dismiss, Plaintiffs have refrained from including the Patients whose assignments are presumptively valid at this stage. Plaintiffs may seek leave to amend for these individuals to join or substitute into this case at a later date, as they

Aetna Life Insurance Company ("Aetna"), AGMA Health Fund, Amazon.com Services LLC Group Health and Welfare Plan, Verint Systems Inc. Comprehensive Welfare Benefit Plan, Virtu Financial Operating LLC Health Plan, Boston Consulting Group, Inc. Welfare Benefits Plan, Dell Inc. Retiree Medical Plan, CVS Health Welfare Benefit Plan, Quest Diagnostics Group Welfare Plan, Mason Tender's District Council Welfare Fund Plan, AlaskaCare Defined Benefit Plan, the Group Medical Benefits for Active Employees Plan, Truist Financial Health Plan, Bank of America Group Benefits Program Plan, Havas North America Welfare Benefit Plan, Syneos Health Employee Welfare Plan, CSX Corporation Medical, Dental, and Vision Plan, Apple Inc. Health and Welfare Benefit Plan, Teladoc Health Inc. Health and Welfare Benefit Plan, IAC Inc. Health and Welfare Benefit Plan, Deutsche Bank Medical Plan, Holthouse Carlin and Van Trigt LLP Welfare Benefit Plan, Deloitte LLP Group Insurance Plan, SAP America Health and Welfare Plan, Stanford Health Care Employee Health and Welfare Benefit Plan, Carvana LLC Health and Welfare Plan, Alaska Electrical Health and Welfare Plan, Open Choice with Aetna Healthfund Plan, as follows:

**PARTIES, JURISDICTION AND VENUE**

1. The APN Plaintiffs are affiliated entities and a part of a family of companies that do business under the trademarks All Points North and APN ("APN"). The companies that operate under these trademarks operate licensed and accredited treatment facilities for individuals struggling with addiction, trauma, and mental illness. APN is primarily based out of Colorado and also offers telehealth services in certain markets.

---

receive responses from these individuals consenting to be named. This includes Patients 1-2, 4, 6-7, 9, 11-13, 15, 17, 19, 21, 23, 26, 30, 33, 35-36, and 39-40.

2. CSMN Operations LLC doing business as All Points North Lodge is a Colorado limited liability company which provides treatment services in Edwards, Colorado, as well as clinical telehealth services across the country.

3. CSMN Operations II LLC is a Colorado limited liability company which provides substance use detoxification treatment services at All Points North – Denver Assessment Center in Aurora, Colorado.

4. Edwards Medical Provider Group LLC is a Colorado limited liability company which provides medical care for individuals in Colorado receiving services at All Points North Lodge and All Points North – Denver Assessment Center.

5. One or more of Plaintiffs, as applicable to varying services provided to individual patients, hold assignments of benefits and are the authorized representatives for purposes of the pre-litigation appeal and litigation for each of the individuals who received services from one or more of Plaintiffs and whose claims have been wrongly denied by Aetna and are the subject of this lawsuit.

6. The Patient Plaintiffs are individuals who were participants or beneficiaries of employee welfare benefit plans providing health benefits that were wrongly denied by the Defendants.

7. While all of Patients 1-42 were aware of this action, and the APN Plaintiffs named them only by number in an attempt to protect their identities, the Court denied Plaintiffs' attempt to extend the time for Patients 1-42 to consider whether they would consent to being named in this action.

8. In the limited time since the Court issued its order granting in part and denying in part the motions to dismiss and granting Plaintiffs limited leave to amend, several of the patients previously identified as Patients 1-42 have agreed to join the lawsuit, while many more are still weighing that decision.

9. Plaintiffs anticipate that should the remaining patients express a desire to join the lawsuit, they will seek leave to amend the complaint to do so.

10. Prior to this amendment, the Patient Plaintiffs were known by the number assigned to them in the table below, and to limit the number of changes in this amended complaint, counsel intend to continue referring to them by their original patient numbers:

| | |
|---|---|
| Perry Snavely | Patient 29 |
| Sara Shriver | Patient 27 |
| Ashley Sagraves | Patient 22 |
| Michelle Taylor | Patient 31 |
| Cynthia Thomas | Patient 32 |
| Ashley Turnquist | Patient 34 |
| Zachary Martin | Patient 16 |
| John Hamm | Patient 8 |
| Connor Schmitt | Patient 25 |
| Nicholas Linton | Patient 14 |
| Tiffani Wolf | Patient 37 |

11. Aetna is an insurance company headquartered in Connecticut and offered insurance and claims administration services to the Defendants for the benefit of the Plaintiffs.

12. At all times relevant to this lawsuit and the claims submitted by the Plaintiffs, Aetna acted as, and was subject to, fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") or was the primary coverage for non-ERISA insurance policies or benefit plans.

13. At all times relevant to this lawsuit Aetna acted as an agent for employee welfare benefit plans and the sponsors of those plans in dealing with the Plaintiffs in connection with the claims at issue in this lawsuit or acted as the insurer in a first party relationship with the insured plaintiff.

14. Aetna wrongly denied coverage for the 42 individuals receiving treatment from Plaintiffs who qualified for coverage under their respective welfare benefit plans.

15. Some of these Patients 1-42 had benefits provided through self-funded welfare benefit plans while benefits for other Patients were provided through fully insured plans. The great majority of the employee welfare benefit plans at issue in this case were subject to and governed by ERISA.

16. The patients at issue in this case are named by a corresponding number.

17. The AGMA Health Fund Plan is a self-funded welfare benefit plan in which Patient #13 was a participant or beneficiary at all relevant times. The Agma Health Fund is the full.

18. The Amazon.com Services LLC Group Health and Welfare Plan is a self-funded welfare benefit plan in which Patients #3 and #5 were participants or beneficiaries at all relevant times. Amazon and Subsidiaries is the plan sponsor.

19. The Verint Systems Inc. Comprehensive Welfare Benefit Plan is a self-funded welfare benefit plan in which Patient #4 was a participant or beneficiary at all relevant times. The plan sponsor is Verint Systems Inc.

20. The Virtu Financial Operating LLC Health Plan is a self-funded welfare benefit plan in which Patient #6 was a participant or beneficiary at all relevant times. The plan sponsor is Virtu Financial Operating LLC.

21. The Boston Consulting Group, Inc. Welfare Benefit Plan is a self-funded welfare benefit plan in which Patient #16 was a participant or beneficiary at all relevant times. The plan sponsor is the Boston Consulting Group, Inc.

22. The Dell Inc. Retiree Medical Plan is a self-funded welfare benefit plan in which Patient #7 was a participant or beneficiary at all relevant times. The plan sponsor is Dell Inc.

23. The CVS Health Welfare Benefit Plan is a self-funded welfare benefit plan in which Patient #10 was a participant or beneficiary at all relevant times. The plan sponsor is CVS Pharmacy, Inc.

24. The Quest Diagnostics Inc. Welfare Benefit Plan is a self-funded welfare benefit plan in which Patient #11 was a participant or beneficiary at all relevant times. The plan sponsor is Quest Diagnostics, Inc.

25. The Mason Tender’s District Council Welfare Fund Plan is a self-funded welfare benefit plan in which Patient #15 was a participant or beneficiary at all relevant times. The plan sponsor is the Mason Tender’s District Council Welfare.

26. The AlaskaCare Defined Benefit Plan is a self-funded non-ERISA welfare benefit plan in which Patient #17 was a participant or beneficiary at all relevant times. The State of Alaska is the plan sponsor.

27. The Group Medical Benefits for Active Employees Plan is a self-funded welfare benefit plan in which Patient #18 was a participant or beneficiary at all relevant times. The plan sponsor is Magellan Midstream Holdings GP, LLC.

28. The Truist Financial Health Plan is a self-funded welfare benefit plan in which Patient #19 was a participant or beneficiary at all relevant times. The Truist Financial Corporation is the plan sponsor.

29. The Bank of America Group Benefits Program Plan is a self-funded welfare benefit plan in which Patient #20 was a participant or beneficiary at all relevant times. The Bank of America Corporation is the plan sponsor.

30. The Havas North America Welfare Benefit Plan is a self-funded welfare benefit plan in which Patient #2 was a participant or beneficiary at all relevant times. The plan sponsor is Euro RSCG.

31. The Syneos Health Employee Welfare Plan is a self-funded welfare benefit plan in which Patient #21 was a participant or beneficiary at all relevant times. The plan sponsor is Syneos Health, LLC.

32. The CSX Corporation Medical, Dental, and Vision Plan is a self-funded welfare benefit plan in which Patient #22 was a participant or beneficiary at all relevant times. The plan sponsor is CSX Corporation.

33. The Apple Inc. Health and Welfare Benefit Plan is a self-funded welfare benefit plan in which Patient #24 was a participant or beneficiary at all relevant times. The plan sponsor is Apple Inc.

34. The Teladoc Health Inc. Health and Welfare Benefit Plan is a self-funded welfare benefit plan in which Patient #26 was a participant or beneficiary at all relevant times. Teladoc Health Inc. is the plan sponsor.

35. The IAC Inc. Health and Welfare Benefits Plan is a self-funded welfare benefit plan in which Patient #27 was a participant or beneficiary at all relevant times. IAC Inc. is the plan sponsor.

36. The Deutsche Bank Medical Plan is a self-funded welfare benefit plan in which Patient #28 was a participant or beneficiary at all relevant times. Deutsche Bank is the plan sponsor.

37. The Holthouse Carlin and Van Trigt LLP Welfare Benefit Plan is a welfare benefit plan in which Patient #29 was a participant or beneficiary at all relevant times. Holthouse Carlin and Van Trigt LLP is the plan sponsor. The Holthouse Carlin and Van Trigt LLP Welfare Benefit Plan was a fully insured plan until June 30, 2023, and became a self-funded plan from July 1, 2023, onwards.

38. The Deloitte LLP Group Insurance Plan is a self-funded welfare benefit plan in which Patient #30 was a participant or beneficiary at all relevant times. Deloitte LLP is the plan sponsor.

39. The SAP America Health and Welfare Plan is a self-funded welfare benefit plan in which Patient #31 was a participant or beneficiary at all relevant times. The plan sponsor is SAP America, Inc.

40. The Stanford Health Care Employee Health and Welfare Benefit Plan is a self-funded welfare benefit plan in which Patient #33 was a participant or beneficiary at all relevant times. The plan sponsor is Stanford Health Care.

41. The Carvana, LLC Health and Welfare Plan is a self-funded welfare benefit plan in which Patient #34 was a participant or beneficiary at all relevant times. The plan sponsor is Carvana, LLC.

42. The Alaska Electrical Health and Welfare Plan is a self-funded welfare benefit plan in which Patient #35 was a participant or beneficiary at all relevant times. The plan sponsor is Alaska Electrical Health and Welfare Fund.

43. The Open Choice with Aetna Healthfund Plan is a self-funded non-ERISA welfare benefit plan in which Patient #39 was a participant or beneficiary at all relevant times. The plan sponsor is Anchorage School District.

44. Aetna's stated justification for the denial of these claims was an alleged deficiency in the document the Plaintiffs submitted for their claims. Plaintiffs made numerous attempts to resubmit documentation and made multiple inquiries as to what materials were missing and what steps should be taken to correct the problem.

45. Despite these repeated good faith efforts by Plaintiffs, Aetna continued to deny payment, refused to provide a meaningful response to Plaintiffs' appeal communications, and refused to engage in a meaningful dialogue with the Plaintiffs.

46. Aetna informed Plaintiffs that all of their claims would be flagged for further review and would not be processed unless full medical records were physically mailed to Aetna with each of the claims.

47. Even after Plaintiffs provided the information and documentation Aetna requested, Aetna continued to deny payment and, despite having all the documents and information necessary to process and pay the claims, continued to improperly assert that it was missing documentation and information necessary to evaluate the claims. Aetna continued to evade responses to Plaintiffs' questions of what documentation was allegedly missing or how Plaintiffs could correct the claims at issue in this lawsuit or that may arise for Plaintiffs' clients in the future.

48. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1), 28 U.S.C. §1331, and 28 U.S.C. § 1367 regarding supplemental jurisdiction.

49. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because the services were provided in Colorado, and because Aetna does business in Colorado.

50. The remedies the Plaintiffs seek under the terms of ERISA and pursuant to 29 U.S.C. § 1132(a)(1)(B) are (i) for benefits owed to the Plaintiffs by Aetna for covered services rendered by Plaintiffs, (ii) an order requiring Aetna to comply with its obligations under ERISA and enjoining Aetna from denying future claims submitted by Plaintiffs without complying with ERISA's claims procedure regulations, (iii) for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violations of ERISA's fiduciary duty standards and claims procedure regulations, (iv) for appropriate equitable

relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violations of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), (v) as well as an award of prejudgment interest on each individual claim, (vi) and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

51. The remedies the Plaintiffs seek for the patients covered by non-ERISA plans or insurance policies and for which this Court has supplemental jurisdiction based on 28 U.S.C. §1367 is for an Order requiring Aetna to pay the benefits called for under the insurance policy or non-ERISA plan, for an award of prejudgment interest and attorney fees and costs, and for such further equitable relief as is proper.

## BACKGROUND FACTS

52. Since 2022, Plaintiffs have experienced an alarming pattern of mass denials from Aetna across 42 patients' claims. Plaintiffs have made every effort to provide Aetna with the information Aetna requested and has attempted to contact Aetna repeatedly to inquire about these concerning mass denials. However, Aetna has repeatedly refused to provide Plaintiffs with any meaningful answers as to why hundreds of total claims from different patients continue to be denied coverage.

53. Aetna's actions, individually and as agents and fiduciaries of the respective ERISA plans on whose behalf it was action, constitute violations of the terms of the respective ERISA plans, ERISA's fiduciary duties, ERISA's claims procedure requirements, and their statutory obligations under MHPAEA and its regulations.

54. Below, Plaintiffs provide summaries of each one of the 42 patients for whom Aetna has repeatedly and wrongfully denied payment. These summaries include the type, length,

and cost of treatment that Plaintiffs provided to each patient, and detail the lengths Plaintiffs went to in attempting to provide the information necessary for Aetna to pay the claims and the degree to which Aetna violated its duties under ERISA and MHPAEA.

**Patient #1**

55. Patient #1 was a participant or beneficiary of a plan fully insured by Aetna.

56. Patient #1 was admitted to an APN facility on February 4, 2023, for residential addiction treatment (sub-acute detoxification: HCPCS code H0010) for their continuing struggles with alcohol use disorder. On February 5, 2023, one of the Plaintiff entities conducted a new patient evaluation (CPT Code 99205). Patient #1 continued to receive residential treatment until February 13, 2023.

57. On March 5, 2023, they were readmitted to residential addiction treatment after relapsing and received a new patient evaluation (CPT Code 99205) on that day. They continued to receive residential treatment until March 12, 2023.

58. On March 12, 2023, they began to receive short-term residential behavioral health treatment (CPT code H0018), until April 13, 2023.

59. On March 14, 2023, a provider evaluated the patient in a psychiatric diagnosis interview examination (CPT code 90792).

60. The patient received family psychotherapy on April 12, 20, 24, 27, and May 3, 10, 2023 (CPT code 90847).

61. The family received family therapy sessions without the patient (CPT code 90846) on April 19, and May 1, and 8, 2023.

62. The patient received partial hospitalization services on April 17, 18, 19, 20, 21, and May 1- 5, and 8-9, 2023 (HCPCS code S0201).

63. The patient received individual psychotherapy sessions on March 16, 21, 23, 28, 30, April 4, 6, 11, 13, 18, 25, and May 5, 12, 2023 (CPT code 90837).

64. On May 12, the patient received an outpatient office visit at an APN facility (CPT code 99213).

65. From May 14 through May 20, 2023, the patient received residential addiction treatment (HCPCS code H0010).

66. Patient #1 signed several Financial Agreements (FAs), and Assignment of Benefits Forms (AOBs) during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #1 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

67. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all submitted claims. Aetna only provided Plaintiffs four vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as comments to every EOB, with no further detail or explanation.

   a. These expenses require further review. After we have completed our review, we will process this claim. F85
   b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:

- Patient's complete chart including daily notes by the attending physician
- Medical and social history
- Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20

c. Based on the information received, these services were not provided. If there is additional information that should be brought to our attention, please contact us. 415

d. The member's plan of benefits provides coverage for services or supplies that we determine are necessary. To meet this requirement the service or supply must be accepted under recognized professional standards as appropriate and effective for the diagnosis, care or treatment of the disease or injury involved. Based on the information provided, this expense does not meet this requirement of the member's plan of benefits and is not covered. If there is additional information that should be brought to our attention, please contact us. F06

68. Plaintiffs attempted to resolve the issues Aetna contended prevented payment of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on March 14, June 8, and July 14, 2023, to prove that the treatment Plaintiffs provided was covered under the member's Plan.

69. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims, including retaining the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

70. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

71. Plaintiffs attempted to submit an appeal to these denials. However, the Aetna portal did not provide an option for Plaintiffs to submit an appeal.

72. After multiple requests to Aetna to inquire about the status of these claims, Plaintiffs filed a special project request on April 23, 2024.

73. Plaintiffs exhausted all pre-litigation obligations under the terms of Patient #1's Plan.

74. As of May 22, 2024, Aetna had sent Plaintiff payments for a fraction of the claims submitted, leaving a total remaining unpaid balance of $203,370.00.

**Patient #2**

75. Patient #2 was a participant or beneficiary in the Havas North America Welfare Benefit Plan with claims administered by Aetna.

76. Patient #2 was admitted to an APN facility on November 18, 2022, for short-term residential treatment (CPT Code H0018) for their continuing struggles with alcohol and cocaine dependence as well as bipolar disorder. They were discharged on December 17, 2022.

77. Plaintiffs submitted claims for coverage of Patient #2's treatment, and Aetna approved coverage of Patient #2's treatment for all dates except two – claims for short-term residential treatment without room and board under CPT Code H0018 from December 11, 2022, and December 12, 2022.

78. Patient #2 was also admitted into residential detox treatment (HCPCS code H0010) from February 22, 2023, until February 24, 2023.

79. Patient #2 signed several FAs and an AOB during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the

patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

80. Plaintiffs submitted each of these claims directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, and Aetna had paid for other days, Aetna denied these claims. Aetna only provided Plaintiffs one vague denial rationale in its two explanations of benefits (EOB), sent on January 5, 2023:

> a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
> - Patient's complete chart including daily notes by the attending physician
> - Medical and social history
> - Daily treatment or progress notes
>
> Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37

81. Plaintiffs attempted to resolve the issues Aetna contended prevented payment of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, to prove that the treatment Plaintiffs provided was covered under the member's Plan. Aetna confirmed that it had received those records on January 31, 2023.

82. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

83. Eventually, Plaintiffs retained the law office of Brian S. King P.C. to assist in providing information to Aetna and attempting to engage Aetna in a meaningful dialogue.

84. Plaintiffs attempted to submit an appeal to these denials. However, the Aetna portal did not provide an option for Plaintiffs to submit an appeal.

85. Plaintiffs exhausted all pre-litigation obligations under the terms of Patient #2's Plan.

86. In July of 2024, Aetna reversed its denials and paid for all but one of the above claims, leaving an unpaid balance of $4,495.00.

**Patient #3**

87. Patient #3 was a participant or beneficiary in the Amazon.com Services LLC Group Health and Welfare Plan, a self-funded plan administered by Aetna.

88. Patient #3 was admitted to an APN facility on February 25, 2023, for short-term residential treatment for their continuing struggles with MDMA and methamphetamine dependence as well as major depressive disorder (CPT Code H0018). They were discharged on March 15, 2023.

89. Plaintiffs submitted claims for coverage of Patient #3's treatment, and Aetna denied coverage for claims for short-term residential treatment without room and board under CPT Code H0018 from February 25, 2023, through March 14th, 2023.

90. Plaintiffs also submitted a claim for coverage of Patient #3's New Patient Comprehensive Initial Assessment under CPT Code 99205, which occurred on February 23, 2023. Aetna denied this claim.

91. Plaintiffs also submitted a claim for coverage of Patient #3's Psychiatric Diagnostic Evaluation under CPT Code 90792, which occurred on February 26, 2023. Aetna denied this claim.

92. Patient #3 signed several FAs and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #3 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

93. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout numerous explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

   a. These expenses require further review. After we have completed our review, we will process this claim. F85
   b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
      - Patient's complete chart including daily notes by the attending physician
      - Medical and social history
      - Daily treatment or progress notes

      Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37
   c. [ON6]

94. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment

Plaintiffs provided was covered under the member's Plan in a series of appeals sent to Aetna on September 21, 2023.

95. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims and retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

96. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

97. Plaintiffs exhausted all pre-litigation obligations under the terms of Patient #3's Plan.

98. As of May 22, 2024, Aetna has not paid for any of the claims, leaving a total unpaid balance of $82,210.00.

**Patient #4**

99. Patient #4 was a participant or beneficiary in the Verint Systems Inc. Comprehensive Welfare Benefit Plan, a self-funded plan administered by Aetna.

100. Patient #4 was admitted to Aurora Detox on June 8, 2023, for sub-acute detoxification treatment (HCPCS Code H0010) of their alcohol dependence. They were transitioned into residential treatment on June 14, 2023.

101. Patient #4 was admitted to an APN facility on June 14, 2023, for short-term residential treatment without room and board (CPT Code H0018), and remained there until discharge on July 1, 2023.

102. Patient #4 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #4 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

103. Plaintiffs submitted claims for coverage of Patient #4's treatment, and Aetna denied coverage for claims for sub-acute detoxification treatment under HCPCS Code H0010 from June 8, 2023 through June 13, 2023.

104. Plaintiffs also submitted claims for coverage of Patient #4's short-term residential treatment, and Aetna denied coverage for the claims for short-term residential treatment under CPT Code H0018 from June 14, 2023 through June 30, 2023.

105. Plaintiffs also submitted a claim for coverage of Patient #4's New Patient Comprehensive Initial Assessment under CPT Code 99205, which occurred on June 9, 2023. Aetna denied this claim.

106. Plaintiffs also submitted a claim for coverage of Patient #4's Psychiatric Diagnostic Evaluation under CPT Code 90792, which occurred on June 15, 2023. Aetna denied this claim.

107. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout numerous explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37
b. [ON6].
c. This claim is a result of a correction of a previously submitted claim. V01
d. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S20]

108. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment Plaintiffs provided was covered under the member's Plan in a series of appeals sent to Aetna on October 12th and 13th, 2023.

109. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

110. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives

instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

111. Plaintiffs exhausted all pre-litigation obligations under the terms of Patient #4's Plan.

112. As of July 2024, Aetna has reversed their denials and sent Plaintiffs payments for all but one of the above claims, with a total unpaid balance of $4,495.00.

**Patient #5**

113. Patient #5 was a participant or beneficiary in the Amazon.com Services LLC Group Health and Welfare Plan, a self-funded plan administered by Aetna.

114. Patient #5 was admitted to an APN facility on July 11, 2023, for residential behavioral health services (CPT Code H0017) of their schizotypal disorder, post-traumatic stress disorder, and major depressive disorder. They were discharged on August 9, 2023.

115. Patient #5 signed an FA and AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #5 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

116. Plaintiffs submitted claims for coverage of Patient #5's treatment, and Aetna denied coverage for claims for residential behavioral health services under CPT Code H0017 from July 11, 2023, through August 5, 2023.

117. Plaintiffs also submitted a claim for coverage of Patient #5's New Patient Comprehensive Initial Assessment under CPT Code 99205, which occurred on July 12, 2023. Aetna denied this claim.

118. Plaintiffs also submitted a claim for coverage of Patient #5's Psychiatric Diagnostic Evaluation under CPT Code 90792, which occurred on July 13, 2023. Aetna denied this claim.

119. Plaintiffs also submitted a claim for coverage of Patient #5's Psychological and Neuropsychological Testing Evaluation under CPT Codes 96130 and 96131, which occurred on July 25, 2023. Aetna denied this claim.

120. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout numerous explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

   a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
      - Patient's complete chart including daily notes by the attending physician
      - Medical and social history
      - Daily treatment or progress notes

      Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37
   b. [ON6].

121. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment

Plaintiffs provided was covered under the member's Plan in a series of appeals sent to Aetna on September 21, 2023, and September 26, 2023.

122. Plaintiffs submitted the medical records alongside the original claims and resubmitted them to Aetna on August 8, 2023.

123. Plaintiffs retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

124. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

125. Plaintiffs attempted to submit an appeal to these denials. However, the Aetna portal did not provide an option for Plaintiffs to submit an appeal for a number of Patient #5's claims for residential behavioral health services from July 11, 2023, through July 24, 2023.

126. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

127. As of July 2024, Aetna has reversed their denials and sent Plaintiffs payments for all but one of the above claims, with a total unpaid balance of $8,990.00.

**Patient #6**

128. Patient #6 was a participant or beneficiary in the Virtu Financial Operating LLC Health Plan, a self-funded plan administered by Aetna.

129. Patient #6 received intensive outpatient treatment from Aurora Detox at various points from August 2, 2022, through December 12, 2022. On December 12, 2022, Patient #6 was referred to another facility.

130. Patient #6 signed several FAs and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

131. Aetna paid for all of Patient #6's claims except two, for behavioral health treatment under HCPCS Code H0015 on December 5, 2022, and for psychotherapy under CPT Code 90837 on December 8, 2022.

132. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout numerous explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37
b. [ON6].
c. The information previously requested for this claim from the member was not received. This claim has been denied. [PPND – 717]

133. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment Plaintiffs provided was covered under the member's Plan in two appeals sent to Aetna on October 10, 2023.

134. Plaintiffs retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

135. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

136. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

137. As of May 22, 2024, Aetna has not paid for any of these claims, with an unpaid balance totaling $5,990.00.

**Patient #7**

138. Patient #7 was a participant or beneficiary in the Dell Inc. Retiree Medical Plan, a self-funded plan administered by Aetna.

139. Patient #7 was admitted to an APN facility on May 8, 2023, for residential behavioral health services (CPT Code H0017) of their major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, sedative dependence, and attention-deficit hyperactivity disorder. They were discharged on May 17, 2023.

140. Patient #7 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #7 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

141. Plaintiffs submitted claims for coverage of Patient #7's treatment, and Aetna denied coverage for claims for residential behavioral health services under CPT Code H0017 from May 8, 2023, through May 16, 2023.

142. Plaintiffs also submitted a claim for coverage of Patient #7's New Patient Comprehensive Initial Assessment under CPT Code 99205, which occurred on May 9, 2023. Aetna denied this claim.

143. Plaintiffs also submitted a claim for coverage of Patient #7's Psychiatric Diagnostic Evaluation under CPT Code 90792, which occurred on May 10, 2023. Aetna denied this claim.

144. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout numerous explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history

- Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37

b. You asked us to reconsider this claim. We reviewed it according to your contract. Our original decision is still correct. We didn't make any further payment. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial. [MDT]

145. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment Plaintiffs provided was covered under the member's Plan in a series of appeals sent to Aetna on July 25, 26, September 28, and October 16, 2023.

146. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

147. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

148. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

149. As of May 22, 2024, Aetna has not paid for any of the above claims, with a total unpaid balance of $51,255.00.

**Patient #8**

150. Patient #8 was a participant or beneficiary of a plan fully insured by Aetna.

151. Patient #8 was admitted to an APN facility on January 29, 2023, for residential behavioral health services (CPT Code H0017) of their generalized anxiety disorder and major depressive disorder. They were discharged on February 18, 2023.

152. Patient #8 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

153. Plaintiffs submitted claims for coverage of Patient #8's treatment, and Aetna denied coverage for claims for residential behavioral health services under CPT Code H0017 from January 29, 2023, through February 16, 2023.

154. Plaintiffs also submitted a claim for coverage of Patient #8's New Patient Comprehensive Initial Assessment under CPT Code 99205, which occurred on January 30, 2023. Aetna denied this claim.

155. After Patient #8's discharge from Plaintiffs, they continued to receive outpatient treatment and individual, group, and family therapy from Plaintiffs. They received treatment intermittently on an outpatient basis from February 27, 2023, through January 1, 2024.

156. Plaintiffs submitted claims for coverage of Patient #8's outpatient treatment and therapy under CPT Codes 90837, 90853, and 90847.

157. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout dozens of

explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37
b. [ON6].
c. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial. [839]
d. These expenses require further review. After we have completed our review, we will process this claim. F85

158. Plaintiffs attempted to resolve the issues Aetna contended prevented payment of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment Plaintiffs provided was covered under the member's Plan in a series of appeals sent to Aetna on July 11, 2023, October 12, 2023, and October 13, 2023.

159. Plaintiffs submitted the medical records alongside the original claims and resubmitted them to Aetna alongside its appeals.

160. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

161. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were

never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

162. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

163. As of May 22, 2024, Aetna has not paid for any above claims with a total unpaid balance of $223,610.00.

**Patient #9**

164. Patient #9 was a participant or beneficiary of a plan fully insured by Aetna.

165. Prior to treatment at APN, Patient #9 received treatment in a residential treatment setting, a partial hospitalization program, and an intensive outpatient program.

166. Patient #9 received outpatient therapy (CPT Code 90837) for their major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder from an APN facility between October 3, 2022, and May 31, 2023.

167. Patient #9 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

168. Aetna paid for some of Patient #9's claims, but denied coverage for outpatient therapy on the following dates, seemingly at random: December 6, 2023; December 13, 2023; February 7, 2023; February 17, 2023; February 24, 2023; March 3, 2023; March 17, 2023; March 23, 2023; March 28, 2023; April 11, 2023; April 28, 2023.

169. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout numerous

explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

a. We denied this charge. We did not receive the details we asked for. See the prior EOB for these charges by logging into your secure provider portal. [PPND – V16]
b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37
c. [ON6]
d. We are denying this claim. The provider sent us a corrected or replacement claim. [R28]
e. The information previously requested for this charge was never received. This charge has been denied. [FRAD – F17]
f. [MM9]
g. These expenses require further review. After we have completed our review, we will process this claim. F85
h. We paid for these services in accordance with the Member's benefit plan. Allowed amount is standardly 50% of billed, however, depending on the Member's plan; the allowed amount can be up to 100%. [051]

170. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment Plaintiffs provided was covered under the member's Plan in a series of Appeals sent to Aetna on October 13, 2023.

171. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

172. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs were repeatedly told

that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

173. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

174. As of May 22, 2024, Aetna has not paid for any of these claims, and Patient #9 had an unpaid balance totaling $27,445.00.

**Patient #10**

175. Patient #10 was a participant or beneficiary in the CVS Health Welfare Benefit Plan, a self-funded plan administered by Aetna.

176. Patient #10 received outpatient therapeutic treatment of their major depressive disorder (Under CPT Codes 90837 and 90853) from February 24, 2022, through April 4, 2023, at an APN facility.

177. Patient #10 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

178. Plaintiffs submitted claims for coverage of Patient #10's treatment, and Aetna denied and approved coverage of claims for the therapy Patient #10 received at random. Aetna approved coverage for treatment before December of 2022, but offered no explanation to begin denying coverage.

179. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout dozens of

explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

a. We denied this service. We didn't receive the details we asked you for. You can refer to the prior EOB for these charges by logging in to your secure provider portal. [FRAD -F17]
b. Your claim has been separated to expedite handling. You will receive a separate notice for the other services reported. (E73)
c. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
d. [ON6]

180. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment Plaintiffs provided was covered under the member's Plan in a series of appeals sent to Aetna on October 13, 2023.

181. Plaintiffs submitted the medical records alongside the original claims and resubmitted them to Aetna alongside its appeals.

182. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

183. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were

never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

184. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

185. As of May 22, 2024, Aetna has refused to pay for these claims and are responsible for an unpaid amount totaling $17,465.00.

**Patient #11**

186. Patient #11 was a participant or beneficiary in the Quest Diagnostics Group Welfare Plan, a self-funded plan administered by Aetna.

187. Patient #11 was admitted to an APN facility on December 16, 2022, for residential behavioral health services (CPT Code H0017) of their major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. They were discharged in early 2023, and Aetna administered Patient #11's self-funded plan until January 1, 2023, at which point the self-funded plan was administered by another insurer.

188. Patient #11 signed several FAs and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

189. Plaintiffs submitted claims for coverage of Patient #11's treatment, and Aetna denied coverage for claims for residential behavioral health services under CPT Code H0017 from December 16, 2022, through December 31, 2022.

190. Plaintiffs also submitted a claim for coverage of Patient #11's New Patient Comprehensive Initial Assessment under CPT Code 99205, which occurred on December 17, 2022. Aetna denied this claim.

191. Plaintiffs also submitted a separate claim for coverage of Patient #11's family therapy under CPT Code 90847, which occurred on December 27, 2022. Aetna denied this claim.

192. Plaintiffs submitted each of these claims directly to Aetna. Aetna denied these claims. Aetna provided Plaintiffs several vague denial rationales throughout numerous explanation of benefits (EOB) reports. One of the following denial rationales was attached to every EOB, with no further detail or explanation.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
Patient's complete chart including daily notes by the attending physician
Medical and social history
Daily treatment or progress notes
Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S37
b. [ON6].
c. Member's plan allows up to 140% of the Medicare Allowable Rate for charges covered by their plan. G23

193. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims. Plaintiffs sent copies of this patient's medical records to prove that the treatment Plaintiffs provided was covered under the member's Plan, which were confirmed to be received by Aetna on January 31, 2023.

194. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

195. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

196. Plaintiffs attempted to submit an appeal to these denials. However, the Aetna portal did not provide an option for Plaintiffs to submit an appeal for a number of Patient #11's claims.

197. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

198. As of May 22, 2024, Aetna has not paid for any of the above claims, amounting to an unpaid balance of $43,625.00.

**Patient #12**

199. Patient #12 was a participant or beneficiary of a plan fully insured by Aetna.

200. Patient #12 was admitted to an APN facility on March 15, 2023, for residential addiction treatment (sub-acute detoxification: HCPCS code H0010) for their continuing struggles with alcohol dependence. Patient #12 also received diagnosis codes for generalized anxiety disorder and depression. On March 15, 2023, Plaintiffs conducted a new patient evaluation (CPT Code 99205). Patient #12 continued to receive residential addiction treatment until March 17, 2023.

201. Patient #12 began receiving short-term residential behavioral health treatment (HCPCS Code H0018) on March 17, 2023, and initially received it through April 16, 2023.

202. Patient #12 also received partial hospitalization services (HCPCS Code S0201) from April 17 through April 21, 2023, then from April 24 through April 28, 2023.

203. Patient #12 then received intensive outpatient substance use disorder treatment (HCPCS Code H0015) on May 1, 2, 12, 15, 17,19, 22, 24, 26, 31, and June 2, 5, 7, 9, 12, 14, 16, and 19, 2023.

204. On March 18, 2023, an APN provider evaluated Patient #12 in a psychiatric diagnosis interview examination (CPT Code 90792).

205. Patient #12 received family psychotherapy (CPT Code 90847) on April 5, 12, 19, and 26, 2023.

206. Patient #12 received an outpatient visit for evaluation and management (CPT Code 99215) on April 17, 2023.

207. Patient #12 received sixty-minute individual therapy (CPT Code 90837) on March 21, 29, 31, April 6, 7, 12, 20, 26, and May 2, 2023.

208. Patient #12 signed several FAs and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

209. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #12 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs six vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. We've sent you a letter requesting the medical records for this patient. Once we receive the records, we will review this claim again. If we don't receive these records within 45 days of this statement date, we may need to deny the claim. You will have a right to appeal the denial at that time. [F02]
b. We denied this service. We didn't receive the details we asked for. You can refer to the prior EOB for these charges by logging into your secure provider profile. [FRAD – F17]
c. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
d. You asked us to review these services again, however, we didn't receive your request within the filing time frame allowed. Therefore, we are upholding our original decision. [MDU]
e. We received your request to reconsider these services. We considered the services based on the reported service and our decision of a fair payment. Our review finds that our original payment is correct. We will make no extra payment. If you disagree, send an appeal within 60 days of this denial. [MDV]
f. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial. [839]

210. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on July 19, 2023, to prove that the treatment Plaintiffs provided was covered under the member's Plan.

211. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

212. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that

those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

213. Plaintiffs submitted appeals to these denials on October 12, 2023, resubmitting the medical records.

214. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

215. As of May 22, 2024, Aetna had sent Plaintiffs payments for 5 of the above claims. The total remaining unpaid balance is $217,430.00.

**Patient #13**

216. Patient #13 was a participant or beneficiary in the AGMA Health Fund, a self-funded plan administered by Aetna.

217. On April 8, 2023, Plaintiffs conducted a new patient evaluation (CPT Code 99205) and Patient #13 was admitted to an APN facility for residential addiction treatment (sub-acute detoxification: HCPCS Code H0010) for their severe alcohol problems with withdrawal symptoms including seizure – requiring hospitalization. Patient #13 was also diagnosed with other substance use disorders.

218. Patient #13 continued receiving residential addiction treatment for sub-acute detoxification (HCPCS Code H0010) from April 8 through April 14, 2023.

219. Patient #13 began receiving short-term residential behavioral health treatment (HCPCS Code H0018) on April 14, 2023, and received it through May 14, 2023.

220. Patient #13 received partial hospitalization services (HCPCS Code S0201) on May 15, 17 through 19, 22 through 26, May 30 through June 2, June 6 through 9, 12 through 16, and 19 through 20, 2023.

221. Patient #13 received family psychotherapy (CPT Code 90847) on April 21, 25, May 5, 9, June 6, and 14, 2023. The patient's family also received psychotherapy without the patient (CPT code 90846) on May 16, 2023.

222. Patient #13 received an evaluation and management services outpatient visit (CPT Code 99213) on May 30 and June 13, 2023.

223. Patient #13 had more detailed outpatient visits (CPT Code 99214) on June 8 and 20, 2023.

224. Patient #13 signed several FAs and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

225. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #13 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs four vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
b. We've sent you a letter requesting the medical records for this patient. Once we receive the records, we will review this claim again. If we don't receive these

records within 45 days of this statement date, we may need to deny the claim. You will have a right to appeal the denial at that time. [F02]

c. These expenses require further review. After we have completed our review, we will process this claim. F85
d. We denied this service. We didn't receive the details we asked for. You can refer to the prior EOB for these charges by logging into your secure provider profile. [FRAD – F17]

226. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on October 13 and 14, 2023, then again on July 24, 2023, to prove that the treatment Plaintiffs provided was covered under the member's Plan.

227. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

228. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

229. Plaintiffs submitted appeals to these denials on October 14, 2023, resubmitting the medical records.

230. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

231. As of May 22, 2024, Aetna had sent Plaintiffs payments for 14 claims filed by Plaintiffs. The total remaining unpaid balance is $244,080.00.

**Patient #14**

232. Patient #14 was a participant or beneficiary of a plan fully insured by Aetna.

233. On November 23, 20222, the patient was admitted to subacute residential treatment at Plaintiffs (HCPCS code H0010) and was discharged on November 26, 2022.

234. On November 29, 2022, Plaintiffs conducted a new patient evaluation (CPT Code 99205) and Patient #14 was admitted to Plaintiffs for short-term residential behavioral health treatment (HCPCS Code H0018).

235. Patient #14 received short-term residential behavioral health treatment (HCPCS Code H0018) from November 29, 2022, through December 22, 2022.

236. Patient #14's family also received a 50-minute family psychotherapy session (CPT Code 90846) on December 21, 2022.

237. Patient #14 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

238. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #14 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs six vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]

b. These expenses require further review. After we have completed our review, we will process this claim. F85
c. We didn't get the information we asked you for. We denied the charge. The member doesn't owe this amount. [PPND – V17]
d. We've denied this charge. We did not receive the details we asked for. See the prior EOB for these charges by logging into your secure provider portal. [PPND – V16]
e. We need additional information in order to consider this charge. The information we need is explained on this statement. Please send us this information within 45 days from the date you receive this statement. We will make our benefit determination either (1) within 51 days after we receive the information we need or (2) within 45 days from the date you receive this statement, whichever is earlier. [F02]
f. The information previously requested for this charge was never received. The charge has been denied. [FRAD – F17]

239. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on June 27, 2023.

240. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

241. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

242. Plaintiffs also submitted an appeal to these denials on June 27, 2023.

243. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

244. As of May 22, 2024, Aetna had sent Plaintiffs payments for four claims. Most claims continue to remain unpaid, with a total remaining unpaid balance of $56,610.00.

**Patient #15**

245. Patient #15 was a participant or beneficiary in the Mason Tender's District Council Welfare Fund Plan, a self-funded plan administered by Aetna.

246. On April 13, 2023, Plaintiffs conducted a new patient evaluation (CPT Code 99205) and Patient #15 was admitted to an APN facility for residential behavioral health treatment (CPT Code H0017) on April 12, 2023.

247. Patient #15 received residential behavioral health treatment from April 12, 2023, through May 12, 2023.

248. Patient #15 received family psychotherapy (CPT Code 90847) on May 1, 4, 8, and 15, 2023.

249. The patient received individual psychotherapy sessions on (CPT Code 90837) on May 23 and June 7, 15, 2023.

250. Patient #15 also received intensive outpatient psychiatric services (CPT Code S9480) on May 22, 23, 25, 30, and June 1, 2023.

251. Patient #15 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #15 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

252. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #15 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs four vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

   a. We can't complete our review of this claim. We received it under a plan where the member isn't showing as active. If they have an active insurance plan, you will need to send the claim to the active plan of benefits. You should also update your records for this patient. [E73]
   b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
      - Patient's complete chart including daily notes by the attending physician
      - Medical and social history
      - Daily treatment or progress notes

      Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
   c. We've denied this service. We didn't receive the details we asked you for. You can refer to the EOB for these charges by logging into your secure provider portal. [FRAD – F17]
   d. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. [839]

253. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on July 21, 2023.

254. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

255. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that

those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

256. Plaintiffs also submitted an appeal to these denials on October 15, 2023, and re-sent the medical records Aetna had requested.

257. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

258. As of May 22, 2024, Aetna had sent Plaintiffs payments for 3 claims filed by Plaintiffs. A large majority of the claims remain unpaid, with a total remaining balance of $159,335.00.

**Patient #16**

259. Patient #16 was a participant or beneficiary in the Boston Consulting Group, Inc. Welfare Benefit Plan, a self-funded plan administered by Aetna.

260. On May 15, 2023, Plaintiffs conducted a new patient evaluation (CPT Code 99205).

261. Patient #16 was admitted to an APN facility for residential behavioral health treatment (CPT Code H0017) on May 14 until June 19, 2023.

262. Patient #16 then received mental health partial hospitalization treatment (CPT Code H0035) from June 20 through 24, 2023.

263. Patient #16 received family psychotherapy (CPT Code 90847) on May 30, June 6, June 13, June 22, June 27, July 3, July 10, July 17, and July 24, 2023.

264. Patient #16 received transcranial magnetic stimulation therapy (CPT Code 90868) on July 17, 19, 20, 21, 25-28, 31, August 15 through 18, 22 through 25, and 28 through 31, 2023.

265. Patient #16 received an outpatient office visit (CPT Code 99213) on June 23, 2023.

266. Patient #16 also received group psychotherapy (CPT Code 90853) on July 5, 12, 18, 19, 25, 26, and August 1, 2 and 9, 2023.

267. Patient #16 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #16 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

268. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #16 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs three vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. We can't complete our review of this claim. We received it under a plan where the member isn't showing as active. If they have an active insurance plan, you will need to send the claim to the active plan of benefits. You should also update your records for this patient. [E73]
b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
c. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. [839]
d. These expenses require further review. After we have completed our review, we will process the claim. F85

e. The service is not covered as the proper certification was not obtained. The member is not responsible for the charge. W91

269. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on July 21, 2023.

270. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

271. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

272. Plaintiffs also submitted appeals to these denials on July 25, August 10, 31, September 12, and October 15, 2023, each time re-sending medical records Aetna had requested.

273. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

274. As of May 22, 2024, Aetna had sent Plaintiffs payments for 33 of the claims. A large majority of the claims filed by Plaintiffs continue to remain unpaid, with a total unpaid balance of $193,825.00.

**Patient #17**

275. Patient #17 was a participant or beneficiary in the non-ERISA Care Defined Benefit Plan, a self-funded plan administered by Aetna.

276. On July 7, 2023, the patient received a new patient evaluation (CPT Code 99205) for Patient #17.

277. Patient #17 then received intensive outpatient treatment for a substance use disorder (HCPCS Code H0015) on July 7, 12, 14, 17, 19, 21, 24, 26, 28, and 31, August 2, 4, 7, 9, 11, 14, 16, 18, 21, 23, 25, 28, and 30, September 19, 25, and 26, October 2, 3, 9, 10, 12, 16, 17, 19, 23, 24, 30, and 31, November 2, 13, 14, 16, 20, 21, and 27, and December 4, 2023.

278. Patient #17 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

279. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #17 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs two vague denial rationales, throughout all explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]

b. This is a duplicate claim. We've already considered it for payment. [109]

280. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on September 12 and 13, 2023.

281. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

282. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

283. Plaintiffs also submitted appeals to these denials on August 10, September 7, September 12, September 13, and October 12, 2023.

284. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

285. As of May 22, 2024, Aetna had sent Plaintiffs payments for 21 claims filed by Plaintiffs. The total remaining unpaid balance is $10,485.00.

**Patient #18**

286. Patient #18 was a participant or beneficiary in the Group Medical Benefits for Active Employees Plan, a self-funded plan administered by Aetna.

287. On June 7, 2023, Plaintiffs conducted a new patient evaluation (CPT Code 99205) for Patient #18.

288. Patient #18 received residential addiction program treatment, sub-acute (HCPCS Code H0010) from Plaintiffs on June 6 and 7, 2023.

289. Patient #18 then received residential behavioral health treatment (CPT Code H0017) on June 8 through July 4, 2023.

290. Patient #18 received family psychotherapy (CPT Code 90847) on July 5, 2023.

291. Patient #18 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #18 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

292. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #18 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs three vague denial rationales, throughout all explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
b. This is a duplicate claim. We've already considered it for payment. [109]
c. These expenses require further review. After we have completed our review, we will process this claim. F85

293. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on July 24, 2023.

294. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

295. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

296. Plaintiffs also submitted appeals to these denials on August 10 and October 13, 2023.

297. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

298. As of May 22, 2024, Aetna had sent Plaintiffs payments for one claim filed by Plaintiffs. Most of the claims continue to remain unpaid, with a total unpaid balance of $120,540.00.

**Patient #19**

299. Patient #19 was a participant or beneficiary in the Truist Financial Health Plan, a self-funded plan administered by Aetna.

300. Patient #19 received short-term residential treatment (HCPCS Code H0018) at an APN facility from November 14, 2023, through December 14, 2022.

301. Patient #19 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

302. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #19 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs four vague denial rationales, throughout

dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
b. We didn't get the information we asked you for. We denied the charge. The member doesn't owe this amount. [PPND – V17]
c. The information previously requested for this charge was never received. The charge has been denied. [FRAD – F17]
d. We denied this charge. We did not receive the details we asked for. See the prior EOB for these charges by logging in to your secure provider portal. [PPND – V16]

303. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on January 12, 2023.

304. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

305. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

306. Plaintiffs submitted appeals to these denials on January 12, 2023.

307. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

308. As of May 22, 2024, Aetna had sent Plaintiffs payments for only one of the claims filed by Plaintiffs. Most claims remain unpaid, with a total unpaid balance of $62,930.00.

**Patient #20**

309. Patient #20 was a participant or beneficiary in the Bank of America Group Benefits Program Plan, a self-funded plan administered by Aetna.

310. Patient #20 received residential behavioral health treatment (CPT Code H0017) at an APN facility from January 18, 2023, through February 23, 2023.

311. Patient #20 received intensive outpatient psychiatric services (CPT Code S9480) on March 8 through 9, 13, 15, 19 through 20, 27, 29, 30, April 3, 5 through 6, 10, 12 through 13, 17, 19 through 20, 24, 26 through 27, and May 1, 3, and 4, 2023.

312. Patient #20 received a psychiatric diagnostic evaluation (CPT Code 90792) on January 19, 2023.

313. Patient #20 received family psychotherapy (CPT Code 90847) on January 25, February 1, February 8, March 1, March 8, March 29, April 12, April 25, and May 3, 2023.

314. Patient #20 also received individual psychotherapy (CPT Code 90837) on June 19, 30, July 7, 10, 14, 21, 26, 29, August 25, 31, September 6, 13, 22, 29, October 29, 30, November 7, 9, 14, 21, 30, and December 6, 12, 14, 2023.

315. Patient #20 received group psychotherapy (CPT Code 90853) on May 10, 17, June 7, 14, 21, 27, 28, July 5, 11, 12, 18, 19, 25, and September 5, 2023.

316. Patient #20 signed several FAs and AOB forms during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized

release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

317. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #20 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs six vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
b. These expenses require further review. After we have completed our review, we will process this claim. F85
c. This is a duplicate claim. We've already considered it for payment. [109]
d. You asked us to review these services again, however, we didn't receive your request within the filing time frame allowed. Therefore, we are upholding our original decision. [MDU]
e. We have received your request for reconsideration on this claim, however it appears our original determination was correct. [839]
f. We received your request to reconsider these services. We considered the claim per your contract. Our review finds that our original decision is correct. We will not make any further payment. [MDT]

318. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on August 31, 2023.

319. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

320. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

321. Plaintiffs submitted appeals to these denials on October 14, 2023.

322. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

323. As of May 22, 2024, Aetna had sent Plaintiffs payments for only two of the claims filed by Plaintiffs. Most claims remain unpaid, with a total unpaid balance of $312,270.00.

**Patient #21**

324. Patient #21 was a participant or beneficiary in the Syneos Health Employee Welfare Plan, a self-funded plan administered by Aetna.

325. Patient #21 received short term residential behavioral health treatment (HCPCS Code H0018) at an APN facility from January 18, 2023, through February 24, 2023.

326. Patient #21 then received partial hospitalization services (HCPCS Code S0201) on February 27, March 2, and March 3, 2023.

327. Patient #21's family received a family psychotherapy session (CPT Code 90846) on January 27, 2023.

328. Patient #21 received individual psychotherapy (CPT Code 90837) on March 1 and March 7, 2023.

329. Patient #21 received evaluation and management outpatient services (CPT Code 99213) on March 6, 2023.

330. Patient #21 received an outpatient visit (CPT Code 99205) on April 14, 2023, when admitted to subacute residential treatment on April 14 through 15, 2023.

331. Patient #21 received intensive outpatient services for substance abuse (HCPCS Code H0015) on March 27, 2023.

332. Patient #21 received subacute residential addiction program inpatient services (HCPCS Code H0010) from June 27 through June 29, 2023.

333. Patient #21 signed several FA and AOB forms during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

334. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though Patient #21 received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs seven vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as commentary to every EOB, with no further detail or explanation:

a. We can't complete our review of this claim. We received it under a plan where the member isn't showing as active. If they have an active insurance plan, you will need to send the claim to the active plan of benefits. You should also update your records for this patient. [E73]

b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]

c. Based on the information received, these services were not provided. 415

d. The amount is over the recognized charge for this service. [551]
e. The information previously requested for this charge was never received. This charge has been denied. [FRAD – F17]
f. You asked us to review these services again, however, we didn't receive your request within the filing time frame allowed. Therefore, we are upholding our original decision. [MDU]
g. These expenses require further review. After we have completed our review, we will process this claim. F85

335. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on August 31, 2023.

336. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

337. Plaintiffs submitted appeals to these denials on August 31, 2023.

338. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

339. As of May 22, 2024, Aetna had sent Plaintiffs payments for six claims filed by Plaintiffs. Most remain unpaid, with a total unpaid balance of $180,465.00.

**Patient #22**

340. Patient #22 was a participant or beneficiary in the CSX Corporation Medical, Dental, and Vision Plan, a self-funded plan administered by Aetna.

341. Patient #22 was admitted to an APN facility on April 18, 2023, and was discharged on May 28, 2023, for residential treatment for their continuing struggles with anxiety and depression (CPT code H0017).

342. On April 19, 2023, the patient underwent a Psychiatric Diagnosis Interview Examination (CPT code 90792).

343. On April 20, 2023, the patient's treatment team provided them with a new patient evaluation (CPT code 99215).

344. The patient received family psychotherapy on April 26, and May 4, 11, and 23, 2023. (CPT code 90847).

345. The patient received intensive outpatient psychiatric services on June 1, 5, 7, 12, 15, 19, 21, 26, 29, and July 3, 5, and 10, 2023 (CPT code S9480).

346. The patient received individual psychotherapy sessions on June 16, 23, and July 11, 2023 (CPT code 90837).

347. Patient #22 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #22 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

348. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs four vague denial rationales, throughout

dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as comments to every EOB, with no further detail or explanation.

a. These expenses require further review. After we have completed our review, we will process this claim. F85
b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20
c. We received your request to reconsider these services. We considered the claim per the member's benefits plan. Our review finds that our original decision is correct. We will not make any further payment. If you disagree, send an appeal within 60 days of this denial. [MDS]
d. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial. (839)

349. Plaintiffs appealed the denials for the patient's residential treatment, all sent to Aetna on July 20, 2023. Plaintiffs also appealed Aetna's denials for the patient's outpatient treatments, on October 12, 2023. Additionally, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on October 12, 2023, to supplement the patient's record.

350. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

351. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that

those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

352. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

353. As of May 22, 2024, Aetna has sent Plaintiffs payments for seven claims filed by Plaintiffs. Most claims remain unpaid, with a total remaining balance of $199,955.00.

**Patient #23**

354. Patient #23 was a participant or beneficiary of a plan fully insured by Aetna.

355. Patient #23 was admitted to an APN facility for residential treatment for their continuing struggles with post-traumatic stress disorder, suicidal ideations, bipolar II disorder, dissociative and conversion disorder, and cannabis dependence.

356. From June 23 to July 31, 2023, the patient received residential treatment (CPT code H0017).

357. On June 24, 2023, the patient underwent a Psychiatric Diagnosis Interview Examination (CPT code 90792).

358. On June 26, 2023, the patient's treatment team provided them with a new patient evaluation (CPT code 99205).

359. During that period, the patient also received a series of psychological and neuropsychological testing evaluation services (CPT codes 96131 and 96130) on July 17, 2023.

360. The patient began to receive mental health partial hospitalization treatment (CPT code H0035) on August 1-4, 7-11, 14-18, and 21-24, 2023.

361. Patient #23 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #23 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

362. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs seven vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as comments to every EOB, with no further detail or explanation.

a. The member's plan of benefits provides coverage for services or supplies that we determine are necessary. To meet this requirement the service or supply must be accepted under recognized professional standards as appropriate and effective for the diagnosis, care or treatment of the disease or injury involved. Based on the information provided, this expense does not meet this requirement of the member's plan of benefits and is not covered. If there is additional information that should be brought to our attention, please contact us. The member is not responsible for this charge unless they agreed to be responsible for this charge in writing before the service or supply was given. (F07)
b. These expenses require further review. After we have completed our review, we will process this claim. F85
c. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20

d. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial. (839)
e. This is a duplicate claim. We've already considered it for payment. (114)
f. This claim has previously been submitted and is currently being processed. (O85)
g. This is an interim charge, type XX3 or XX4. We can't apply the plan's benefits until we receive a complete replacement claim. Do not bill the member. We will show the member's responsibility on our final explanation of benefits. (NP3)

363. Plaintiffs individually appealed the claims available for appeal in the Aetna portal, all sent to Aetna on September 19 and 20, 2023.

364. Additionally, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on July 25, September 7, 19, and 20, 2023 to supplement the patient's record.

365. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

366. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

367. Plaintiffs attempted to submit an appeal for all the denied claims. However, the Aetna portal did not provide an option for Plaintiffs to submit an appeal for most of the denied claims.

368. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

369. As of May 22, 2024, Aetna has sent Plaintiffs payments for twenty-one claims filed by Plaintiffs. Most of the claims remain unpaid, with a total remaining balance of $100,190.00.

**Patient #24**

370. Patient #24 was a participant or beneficiary in the Apple Inc. Health and Welfare Benefit Plan, a self-funded plan administered by Aetna.

371. Patient #24 received a telehealth individual psychotherapy appointment (CPT code 90837) on January 23, 2023, with Rebecca Dein, LSW, a staff member at an APN facility. The client was discharged, as they had a scheduled appointment with an in-person provider.

372. Patient #24 signed several FAs during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

373. Plaintiffs submitted the claim listed above directly to Aetna, which Aetna subsequently denied. As an explanation for the denial, Aetna only provided Plaintiffs one vague rationale for denial, as quoted below.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20

374. Plaintiffs individually appealed this claim on October 13, 2023, and sent a copy of this patient's medical records, as Aetna had requested.

375. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

376. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of this unpaid claim. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

377. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

378. As of May 22, 2024, Aetna continues to refuse coverage, even after receiving all available documentation from Plaintiffs, and the remaining balance for this patient's claim $2,495.00.

**Patient #25**

379. Patient #25 was a participant or beneficiary in the CSX Corporation Medical, Dental, and Vision Plan, a self-funded plan administered by Aetna.

380. Patient #25 was admitted to an APN facility on January 2, 2023, and was discharged on January 19, 2023, for residential treatment for their continuing struggles with depression and substance abuse (HCPCS code H0018).

381. The patient also met with treatment staff for a new patient office visit (CPT code 99205) on January 2, 2023.

382. On January 3, 2023, the patient underwent a Psychiatric Diagnosis Interview Examination (CPT code 90792).

383. On January 10, 2023, the patient's family received family psychotherapy (CPT code 90846).

384. After relapsing, the patient returned to the APN facility for residential sub-acute detoxification (HCPCS code H0010) on March 20, 2023, and continued to receive treatment until March 28, 2023. The patient received a new patient evaluation (CPT code 99205) from their treating staff on March 21, 2023.

385. The patient also received residential treatment (HCPCS code H0018) on March 28 through March 29, 2023.

386. Patient #25 signed several FAs and AOB forms during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

387. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs seven vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as comments to every EOB, with no further detail or explanation.

a. These expenses require further review. After we have completed our review, we will process this claim. F85
b. We denied this service. We did not receive the details we asked for. You can refer to the prior EOB for these charges by logging into your secure provider portal. (PPND-717)
c. Based on the information received, these services were not provided. If there is additional information that should be brought to our attention, please contact us. 415
d. The information previously requested for this claim was never received. This claim has been denied. The member is not responsible. (FRAD-F19)

e. We've sent you a letter requesting the medical records for this patient. Once we receive the records, we will review this claim again. If we don't receive these records within 45 days of this statement date, we may need to deny the claim. You will have a right to appeal the denial at that time. (F02)
f. This is a duplicate claim that has already been considered for payment. (770)
g. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20

388. Plaintiffs attempted to submit an appeal for all the denied claims. However, the Aetna portal did not provide an option for Plaintiffs to submit an appeal for many of the denied claims.

389. For all the claims available for appeal, Plaintiffs appealed the denials for the patient's detox and behavioral health residential treatment, all sent to Aetna on October 13, 2023.

390. For each one of the claims Aetna denied based on lack of information, Plaintiffs faxed copies of this patient's medical records to Aetna, on March 27 and June 20, 2023, to supplement the patient's record.

391. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

392. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

393. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

394. As of May 22, 2024, Aetna has sent Plaintiffs payments for four claims. Most claims remain unpaid, with a total remaining balance of $111,880.00.

**Patient #26**

395. Patient #26 was a participant or beneficiary in the Teladoc Health Inc. Health and Welfare Benefit Plan, a self-funded plan administered by Aetna.

396. Patient #26 was admitted to an APN facility on April 1, 2023, and received residential sub-acute treatment (HCPCS code H0010) for their continuing struggles with alcohol use and substance abuse until April 3, 2023.

397. The patient also met with treatment staff for a new patient office visit (CPT code 99205) on April 2, 2023.

398. On April 4, 2023, the patient underwent a Psychiatric Diagnosis Interview Examination (CPT code 90792).

399. From April 3 until May 3, 2023, Patient #26 received residential behavioral health treatment (HCPCS code H0018).

400. On April 17, 2023, the patient received an initial treatment of therapeutic repetitive transcranial magnetic stimulation (rTMS) (CPT code 90867).

401. Patient #26 continued to receive rTMS therapy (CPT code 90868) on April 18-21, 24- 28, and May 1-4, 2023.

402. The patient also received group therapy sessions (CPT code 90853) on June 19, July 11, 17, 27, and August 3, 2023.

403. On April 11, 25, May 11, 18, June 15, 22, 29, July 13, 27, and August 17, and 31, 2023, the patient participated in family psychotherapy sessions (CPT code 90847).

404. On May 10, 17, 24, 31, June 14, 28, July 5, 19, August 2, 9, 23, 30, September 13, 20, October 6, 13, 20, 27, November 10, and December 1, 8, 12, 29, 2023, the patient received outpatient individual psychotherapy sessions (CPT code 90837).

405. Patient #26 transitioned to receive intensive outpatient treatment for their substance use disorders (HCPCS code H0015) on May 8-9, 25, June 1, 5, 6, 8, 12, 20, July 10, and 19, 2023.

406. Patient #26 signed several FAs and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #26 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

407. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs with three vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as comments to every EOB, with no further detail or explanation.

a. These expenses require further review. After we have completed our review, we will process this claim. F85
b. We denied this service. We did not receive the details we asked for. You can refer to the prior EOB for these charges by logging into your secure provider portal. (PPND-717)

c. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20

408. On October 14, 2023, Plaintiffs appealed Aetna's denial for the patient's initial new patient intake at the APN facility. This appeal included a copy of the patient's medical records, as requested by Aetna.

409. On October 14, 2023, Plaintiffs appealed Aetna's denial of coverage for the patient's Psychiatric Diagnosis Interview Examination. This appeal included a copy of the patient's medical records, as requested by Aetna.

410. Plaintiffs appealed Aetna's denials for the patient's individual psychotherapy sessions on October 14 and 15, 2023. These appeals included a copy of the patient's medical records, as requested by Aetna.

411. Plaintiffs appealed Aetna's denials for the patient's group therapy sessions on October 14, 2023. These appeals included a copy of the patient's medical records, as requested by Aetna.

412. Plaintiffs appealed Aetna's denial of coverage for the patient's family psychotherapy sessions on October 14, 2023. These appeals included a copy of the patient's medical records, as requested by Aetna.

413. Plaintiffs appealed Aetna's denials for the patient's rTMS therapy sessions on October 16, 2023. These appeals included a copy of the patient's medical records, as requested by Aetna.

414. Plaintiffs appealed Aetna's denials for the patient's intensive outpatient programs for substance use disorders on September 30 and October 14, 2023. These appeals included a copy of the patient's medical records, as requested by Aetna.

415. Plaintiffs appealed Aetna's denials for the patient's sub-acute detoxification residential treatment on October 14, 2023. These appeals included a copy of the patient's medical records, as requested by Aetna.

416. The Aetna portal did not provide an option for Plaintiffs to submit an appeal for Aetna's denial of coverage for the patient's residential treatment. However, Plaintiffs faxed a copy to Aetna of the patient's medical records for each claim on July 21, 2023.

417. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

418. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

419. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

420. As of May 22, 2024, Aetna has sent Plaintiffs payments for fifty-three claims. Most claims remain unpaid, with a total remaining balance of $139,685.00.

**Patient #27**

421. Patient #27 was a participant in the self-funded IAC Inc. Health and Welfare Benefits Plan. Aetna was the claims administrator for this patient.

422. The patient received an initial evaluation and management visit with the APN facility's treatment team on January 12, 2023.

423. Patient #27 began receiving short-term residential treatment (HCPCS code H0018) at an APN facility on January 12, 2023, and was discharged on February 24, 2023.

424. The patient transitioned to intensive outpatient treatment for substance use disorders (HCPCS code H0015), and received treatment on February 27, March 2, 6-7, 9, 20-23, 27-28, 30, and April 3-4, 6, 10-11, 13, and 20, 2023.

425. During these periods, the patient also received family psychotherapy sessions (CPT code 90847) on January 25, February 9, 15, 20, March 8, July 26, and August 2, 2023.

426. The patient also received individual psychotherapy sessions (CPT code 90837) on March 1, 6, 10, 13, 20, 24, April 3, 5, 12, 19, May 4, 8, 10, 15, 17, 24, 25, 31, June 7, 14, 28, July 12, 19, and August 11, 25, 2023.

427. Patient #27 also participated in eight group therapy sessions on May 1, 2023.

428. Patient #27 signed several FAs during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #27 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

429. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs with three vague denial rationales, throughout dozens of explanation of benefits (EOB) reports, to explain their decision.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20
b. These expenses require further review. We have requested additional information from you by separate letter. After we have received the requested information and completed our review, we will consider the claim.
c. This is a duplicate claim. We've already considered it for payment. (109)

430. Plaintiffs never received a document request from Aetna prior to these claim denials. On October 15, 2023, Plaintiffs appealed Aetna's denial of coverage for the patient's treatments. These appeals included a copy of the patient's medical records, as Aetna requested.

431. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

432. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

433. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

434. As of May 22, 2024, Aetna has sent Plaintiffs payments for forty-four claims. The large majority of claims remain unpaid, with a total remaining balance of $221,410.00.

**Patient #28**

435. Patient #28 was a participant in the self-funded Deutsche Bank Medical Plan. Aetna was the claims administrator for this patient.

436. Patient #28 received group therapy sessions at an APN facility on December 6, 20, and 27, 2022.

437. Patient #28 signed an FA during their treatment dates. This document authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #28 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

438. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received these treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs with two vague rationales to explain their denial of coverage, as quoted below.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

> Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20
>
> b. These expenses require further review. We have requested additional information from you by separate letter. After we have received the requested information and completed our review, we will consider the claim.
>
> c. We need additional information in order to consider this charge. The information we need is explained on this statement. Please send us this information within 45 days from the date you receive this statement. We will make our benefit determination either (1) within 15 days after we receive the information we need or (2) within 45 days from the date you receive this statement, whichever is earlier.
>
> If we do not receive the information we need, this charge will be denied. The effective date of the denial will be the 46th day after the date you receive this statement. The basis for the denial will be that we do not have the information we need to consider this charge. You will have a right to appeal that denial at that time. In order to appeal that denial, please see the information on the back of this form describing your right to appeal. (F02)

439. On October 16, 2023, Plaintiffs appealed Aetna's denial of coverage for the patient's treatments. These appeals included a copy of the patient's medical records, as requested by Aetna.

440. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

441. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan.

442. Plaintiffs retained the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

443. As of May 22, 2024, Aetna has sent Plaintiffs payments for one of the three claims filed by Plaintiffs. Two claims continue to be left unpaid, with a total remaining balance of $4,990.00.

**Patient #29**

444. Patient #29 was a participant in the self-funded Holthouse Carlin and Van Trigt LLP Welfare Benefit Plan. Aetna was the claims administrator for this patient.

445. Patient #29 received a new patient evaluation by her treatment team (CPT code 99205) on October 28, 2022.

446. The patient received residential behavioral treatment at an APN facility (HCPCS code H0018) on October 31 through December 6, 2022.

447. Patient #29 received an initial transcranial magnetic stimulation (TMS) treatment on November 21, 2022 (CPT code 90867). The patient then received additional treatments on November 22, 23, 25, 28-30, December 1, 2, 5-9, 12-16, 19-23, 26, 2022, and March 21-24, 28-31, and April 3-5, 2023 (CPT code 90868).

448. Plaintiffs billed Aetna for the patient's established patient office visit (CPT code 99214) on December 7, 2022. The patient also received these routine office visits with their treatment team on December 12, and 21, 2022.

449. The patient received partial hospitalization services (HCPCS code S0201) on December 7-9 and 12-15, 2022.

450. Patient #29 received intensive outpatient treatment for substance abuse issues (HCPCS code H0015) on December 26, 27, 29, 2022, and January 1, 3, 5, 9, 23, and 24, 2023.

451. On January 4, 9, 17, 23, and 30, 2023, the patient received family psychotherapy sessions.

452. From March 5 through April 5, 2023, the patient was admitted for short-term behavioral health residential treatment at an APN facility (HCPCS code H0018).

453. The patient received individual psychotherapy sessions (CPT code 90834) on March 8, 9, 13, 14, 20, 22, 27, 29, and April 3, 2023.

454. The patient received office visits (CPT code 99213) on April 7, 10, 25, and May 3, 2023.

455. The patient received partial hospitalization services (HCPCS Code S0201) on April 6-7, 10-13, 17-21, 24-27, and May 1-4, 2023.

456. The patient then transitioned to receiving intensive outpatient treatment for substance use disorders (HCPCS code H0015) on May 8, 10, 12, 15, 17, 19, 22, 24, 26, 31, June 2, 5, 7, 9, 12, 14, 16, 19, 21, 23, 26, 28, July 3, 5, 7, 10, 12, 14, 19, 21, 24, 26, 28, 31, and August 2, and 4, 2023.

457. Patient #29 signed several FAs and AOB forms during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #29 signed two Aetna Authorized Representative Request forms, which again established Plaintiffs as an Authorized Representative.

458. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received these treatments on different dates from Plaintiffs, Aetna denied all

claims above. Aetna only provided Plaintiffs with one of the following eleven vague rationales to explain their denial of coverage, as quoted below.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20
b. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial (839).
c. We have received your request for reconsideration on this claim: however it appears our original determination was correct based on Provider specific claim requirements. If you disagree with this determination, please submit an appeal within 60 days of this denial. (Q45)
d. These expenses require further review. We have requested additional information from you by separate letter. After we have received the requested information and completed our review, we will consider the claim.
e. The member does not owe this amount. This service is rebundled into another comprehensive procedure done on the same day. We already considered the other service for payment. (F31)
f. This is in response to your inquiry about this claim. We reviewed our original decision; based on available information, our original decision appears to be correct. To appeal this decision, contact the Provider Service Center or submit additional information to P.O. Box 14020, Lexington, KY 40512. (F48)
g. We denied this charge. We did not receive the details we asked for. See the prior EOB for these charges by logging into your secure provider portal (PPND-V16).
h. You asked us to reconsider this claim. We reviewed it according to your contract. Our original decision is still correct. We didn't make any further payment. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial. (MDT)
i. Based on the information received, these services were not provided. If there is additional information that should be brought to our attention, please contact us.
j. The information previously requested for this claim was never received. This claim has been denied. The member is not responsible. (FRAD-F19)
k. You asked us to review these services again, however, we didn't receive your request within the filing time frame allowed. Therefore, we are upholding our original decision. If you disagree, you can send an appeal within 60 days of this denial. For more details on our filing time frames, see our website at

https://www.aetna.com/health-care-professionals/disputes-appeals/disputes-appeals-overview.html. (MDU) (MM9)

459. On July 6, 14, August 30, and October 16, 2023, Plaintiffs faxed to Aetna additional copies of this patient's medical records, as Aetna has requested in these EOBs. Plaintiffs had already sent copies of this patient's medical records when originally filing these claims.

460. Plaintiffs attempted to submit an appeal for all of the denied claims. However, the Aetna portal did not provide an option for Plaintiffs to submit an appeal for many of the denied claims.

461. Plaintiffs appealed Aetna's denial of coverage for all the patient's intensive outpatient treatments (HCPCS code H0015) on September 30 and October 16, 2023. These appeals included another copy of the patient's medical records and other information about the patient, as requested by Aetna.

462. Plaintiffs appealed Aetna's denial of coverage for all the patient's psychotherapy (CPT code 90837) and family psychotherapy sessions (CPT code 90847) on October 16, 2023. These appeals included another copy of the patient's medical records and other information about the patient, as requested by Aetna.

463. Aetna also denied the patient's routine outpatient office visits with their treatment team at an APN facility. Plaintiffs appealed this decision on October 16, 2023, and included copies of the patient's medical records and other information about the patient, as requested by Aetna, in the appeal.

464. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were

repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

465. On July 5, 2023, Plaintiffs sent a letter directly to Aetna, demanding payments for these claims. Plaintiffs wrote that after repeated efforts by Plaintiffs to be provided with information as to why all of these claims were continually denied, even after sending multiple copies of the patient's medical records, Aetna had continued to stonewall their efforts.

466. Plaintiffs stated that since medical records were provided over 60 days prior to this letter, and Aetna provided no additional information, Plaintiffs demanded payments for these claims. They went on to state that if these payments were not received within 30 days of the letter, they would escalate this matter to the Colorado Department of Managed Care.

467. Plaintiffs received no response to this letter from Aetna.

468. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

469. As of May 22, 2024, Aetna has sent Plaintiffs payments for forty-five claims. The large majority of claims remain unpaid, with a total remaining balance of $297,145.00.

**Patient #30**

470. Patient #30 was a participant in the self-funded Deloitte LLP Group Insurance Plan under Aetna. Aetna was the claims administrator for this patient.

471. Patient #30 began to receive behavioral health residential treatment (CPT code H0017) at an APN facility on August 24, 2023, and was discharged on September 29, 2023.

472. The patient also received a new patient evaluation by their treatment team (CPT code 99205) on August 25, 2023, and a Psychiatric Diagnosis Interview Examination (CPT code 90792) on August 26, 2023.

473. Patient #30 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

474. In addition, Patient #30 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

475. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received these treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs with two vague rationales to explain their denial of coverage, as quoted below.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20

b. We've asked our member to confirm if they have other coverage for the dates of service on this claim. If you have collected the other coverage information for this member, please provide us with:
    - The name and date of birth of the other policyholder as well as the relationship to our member

- The name, address, phone number, subscriber ID, group number and effective date of the other insurance
- Employment status (actively employed, retired or on COBRA)

You can either call to give us this information or add this information on the EOB and return it to us at the address on this statement. Mark the envelope Attn: COBL. If we don't receive this information within 45 days, we may need to deny the claim. You will have a right to appeal the denial at that time. (COBL – E87)

476. On October 14, 2023, Plaintiffs appealed Aetna's denial of coverage for all the patient's treatments. These appeals included a copy of the patient's medical records and other information about the patient, as requested by Aetna.

477. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

478. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

479. As of May 22, 2024, Aetna refused to send any payments to Plaintiffs for these claims. The total account balance is $37, 260.00.

**Patient #31**

480. Patient #31 was a participant in the SAP America Health and Welfare Plan, self-funded plan, with claims administered by Aetna.

481. Patient #31 was admitted to an APN facility on April 12, 2023, and began receiving behavioral health residential treatment care (CPT Code H0017) for their continuing

struggles with mental health disorders. On April 13, 2023, their APN treatment providers conducted a new patient evaluation (CPT Code 99205). They continued to receive residential treatment until May 13, 2023.

482. On April 14, 2023, a provider at the APN facility evaluated the patient in a psychiatric diagnosis interview examination (CPT Code 90792).

483. On May 23, 2023, the patient began receiving mental health partial hospitalization treatment (CPT Code H0035). On May 24, 2023, the patient was evaluated in a psychiatric diagnosis interview examination (CPT Code 90792). They continued partial hospitalization treatment until June 9, 2023.

484. The patient received family psychotherapy on April 20, 27, and May 4, 10, 25, and June 1, 2023 (CPT Code 90847).

485. On June 6, 2023, the patient attended a new patient visit (CPT Code 99215).

486. Patient #31 signed several FAs and AOB forms during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #31 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

487. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs four vague denial rationales, throughout

dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as comments to every EOB, with no further detail or explanation.

a. These expenses require further review. After we have completed our review, we will process this claim. F85
b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
c. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S20]
d. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. Please provide treatment records, including:
   - Patient's complete chart including daily notes by attending physicians
   - Medical and social histories
   - Records of the patient's chief complaint
   - Record of the treating provider's findings
   - Daily treatment or progress note
   - Record of the treating provider's preliminary and final diagnoses
   - Copy of all diagnostic and laboratory test results, including X-rays and X-ray reports
   - Operative reports
   - Pathology reports
   - Expected date of discharge

   If we receive the information within the timely filing requirements of the plan, we will complete our review. [S04]
   [ON6]

488. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on July 14 and October 16, 2023, to prove that the treatment Plaintiffs provided was covered under the member's Plan.

489. Plaintiffs also sent appeals for these claims on October 16, 2023, including a copy of the patient's medical records as Aetna had requested.

490. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

491. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

492. As of May 22, 2024, Aetna has sent Plaintiffs payments for ten claims. The large majority of claims remain unpaid, with a total remaining balance of $163,505.00.

**Patient #32**

493. Patient #32 was a member of a fully insured plan under Aetna.

494. Patient #32 began receiving behavioral health residential treatment care for their struggles with mental health and substance abuse issues on October 14, 2022 (CPT Code H0017) at an APN facility. They continued treatment until November 17, 2022.

495. The patient began receiving mental health partial hospitalization treatment on November 18, 2022 (CPT Code H0035). They continued treatment until December 9, 2022.

496. On December 14, 15, 19, 22, 26, and 28, 2022, the patient received intensive outpatient psychiatric services (CPT Code S9480).

497. On November 28, 2022, the patient received 45 minutes of psychotherapy (CPT Code 90834).

498. On November 30 and December 7, 2022, the patient received 60 minutes of psychotherapy (CPT Code 90837).

499. On December 5, 2022, the patient attended an office visit (CPT Code 99214).

500. On October 26, November 1, 11, December 6, 13, 22, and 27, 2022, the patient received family psychotherapy (CPT Code 90847).

501. Patient #32 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

502. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs with one of the following eleven vague denial rationales, throughout dozens of explanation of benefits (EOB) reports.

   a. The information previously requested for this charge was never received. This charge has been denied. [FRAD – F17]
   b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
      - Patient's complete chart including daily notes by the attending physician

- Medical and social history
- Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]

c. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S20]
d. The information previously requested for this charge was never received. This charge has been denied. [FRAD – F17]
   [ON6]
e. We denied this charge. We did not receive the details we asked for. See the prior EOB for these charges by logging into your secure provider portal. [PPND – V16]
   [ON6]
f. This is an interim charge, type XX3 or XX4. We can't apply the plan's benfits until we receive a complete replacement claim, type XX7. Do not bill the member. We will show the member's responsibility on our final explanation of benefits. [NP3]
   [ON6]
g. You asked us to review these charges again, however, we didn't receive your request within the filing time frame allowed. Therefore, we are upholding our original decision. If you disagree, you can send an appeal within 60 days of this denial. For more details on our filing time frames, see our website at https://www.aetna.com/health-care-professionals/disputes-appeals/disputes-appeals-overview.html. [MDU]
h. We received your request to reconsider these services. We considered the claim per the member's benefits plans. Our review finds that our original decision is correct. We will not make any further payment. If you disagree, send an appeal within 60 days of this denial. [MDS]
i. Member's plan allows up to 140% of the Medicare Allowable Rate for charges covered by their plan. G23
   Payment for this service is included in the case rate paid for the claim.
j. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial. [839]
k. We have received your request for reconsideration of this claim; however, it appears our original determination was correct based on Aetna policy. If you

> disagree with this determination, please submit an appeal within 60 days of this denial. [Q28]

503. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on January 11, 2023, to prove that the treatment Plaintiffs provided was covered under the member's Plan.

504. Plaintiffs also appealed Aetna's denials for these claims on October 16, 2023, attaching a copy of the patient's medical records as Aetna had requested.

505. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

506. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

507. As of May 22, 2024, Aetna has sent Plaintiffs payments for one claim. The large majority of claims remain unpaid, with a total remaining balance of $150,665.00.

**Patient #33**

508. Patient #33 was a participant in the Stanford Health Care Employee Health and Welfare Benefit self-funded Plan, with claims administered by Aetna.

509. Patient #33 attended an outpatient visit to receive a new patient evaluation (CPT Code 99205) on February 2, 2023 at an APN facility.

510. The patient began receiving short-term residential behavioral health care (CPT Code H0018) on February 3, 2023. They continued treatment until March 6, 2023.

511. On March 7, 2023, the patient began receiving partial hospitalization services (HCPCS Code S0201). They continued treatment until March 17, 2023.

512. The patient received therapeutic repetitive transcranial magnetic stimulation treatment (CPT Code 90868) on February 15-17, 20- 24, and 27, and March 6-10, 13-16, and April 4-7, 13-14, 17-21, 24-26, 2023. The patient's initial session (CPT Code 90867) took place on February 14, 2023.

513. On March 9 and 13, 2023, the patient attended 45 minutes of psychotherapy (CPT Code 90834).

514. On March 16 and April 11, 2023, the patient attended 60 minutes of psychotherapy (CPT Code 90837).

515. The patient received therapeutic repetitive transcranial magnetic stimulation treatment with subsequent motor threshold redetermination (CPT Code 90869) on April 3 and 12, 2023.

516. From April 3 to May 12, 2023, the patient received intensive outpatient psychiatric services (CPT Code S9480).

517. Patient #4 signed several FAs and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

518. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided with Plaintiffs five vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as comments to every EOB, with no further detail or explanation.

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37]
b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S20]
c. Based on the information received, these services were not provided. If there is additional information that should be brought to our attention, please contact us. 415
d. We have received your request for reconsideration on this claim, however it appears our original determination was correct. If you disagree with this determination, please submit an appeal within 60 days of this denial. [839]
e. These expenses require further review. After we have completed our review, we will process this claim. F85

519. Plaintiffs sent appeals for the denied claims on July 19, 2023, to prove that the treatment Plaintiffs provided was covered under the member's Plan. Each of these appeals included a copy of the patient's medical records, as Aetna had requested.

520. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

521. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

522. As of May 22, 2024, Aetna has sent Plaintiffs payments for seven claims. The large majority of claims remain unpaid, with a total remaining balance of $228,995.00.

**Patient #34**

523. Patient #34 was a participant in the self-funded Carvana, LLC Health and Welfare Benefit Plan, with claims administered by Aetna.

524. Patient #34 was admitted to an APN facility on October 25, 2021, for family psychotherapy (CPT code 90847), and received family psychotherapy again on December 8, 19, 2022, and on January 4, and 9, 2023.

525. They received group therapy (CPT code 90853) on November 3, 10, 17, December 1, 8, 22, and 29, 2022, and on January 5, 9, 12, 19, February 2, 9, 16, 23, March 2, 16, 23, 30, April 13, May 4, 11, 25, June 1, 8, 15, 29, July 6, 13, 20, August 3, 17, 24, September 14, October 5, 12, 26, November 3, 9, 10, 17, 30, and December 14, 21, and 28, 2023. Despite continuing struggles with Aetna refusing to cover these treatments, Plaintiffs

continued to provide these services to the patient on January 4, 11, February 1, 8, 15, 22, 29, March 7, 21, 28, April 4, 18, 21, 25, May 2, 9, 23, June 17, July 1, 8, and 22, 2024.

526. Patient #34 received psychotherapy (CPT code 90837) on November 18, December 2 and 30, 2022, and January 9, February 2 and 27, March 13 and 27, April 10, May 3, June 5 and 19, July 10, and August 3, 17, September 14, October 5, November 8, 18, 22, and December 16, 27, 2023. Despite continuing struggles with Aetna refusing to cover these treatments, Plaintiffs continued to provide these services to the patient on January 20, 24, February 22, March 7, 22, April 9, 26, May 22, June 18, and July 2, and 26, 2024.

527. Patient #34 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

528. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatment on different dates from Plaintiffs, Aetna denied all of the above claims. Aetna only provided Plaintiffs with the following vague denial rationales throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as a comment to every EOB, with no further detail or explanation:

a. These expenses require further review. After we have completed our review, we will process this claim. F85
b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history

- Daily treatment or progress notes

Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. S20

c. We denied this service. We didn't receive the details we asked you for. You can refer to the prior EOB for these charges by logging into your secure provider portal. [PPND – V17]
d. There is a discrepancy with this claim and a claim that has already been processed for this procedure, date of service, number of services, billed and/or servicing provider. Please contact our office to advise if this is a corrected claim or a claim for additional services. [M76] [ON6]
e. This is a duplicate claim that has already been considered for payment. 114 [ON6]
f. This claim has previously been submitted and is currently being processed. [O85]
g. The member's plan of benefits provides coverage for services or supplies that are necessary. To meet this requirement the service or supply must be accepted under recognized professional standards as appropriate and effective for the diagnosis, care or treatment of the disease or injury involved. In addition, it should not be experimental or still under clinical investigation. Based on the information provided, this expense does not meet this requirement under the member's plan of benefits and is not covered. If there is additional information that should be brought to our attention, please contact us. [085]
h. You asked us to reconsider this claim. Our original decision is still correct. The member doesn't owe this amount. If you disagree, you can submit an appeal within 60 days of this denial. [839]

529. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on March 14, June 8, and July 14, 2023.

530. Plaintiffs appealed each one of the above claims, explaining that with the complete records attached to the appeal, Aetna should be able to adequately review and pay for Patient #34's medically necessary treatment.

531. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that

those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

532. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

533. As of May 22, 2024, Aetna has sent Plaintiffs payments for thirty-three claims. The remaining account balance is $27,620.

**Patient #35**

534. Patient #35 was a participant in the self-funded Alaska Electrical Health and Welfare Plan, with claims administered by Aetna.

535. Patient #35 was admitted to an APN facility on October 26, 2022, for group therapy (CPT code 90853).

536. Patient #35 continued to receive group therapy (CPT code 90853) on November 1, 2, 8, 15, 16, 29, 30, December 6, 7, 13, 14, 21, 27, and 28, 2022, and January 3, 4, 10, and 11, 2023.

537. Patient #35 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

538. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs with one vague denial rationale throughout

dozens of explanation of benefits (EOB) reports. The following denial rationale was attached as a comment to every EOB, with no further detail or explanation:

a. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37] [ON6]

539. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on October 10 and 12, 2023 as part of an appeal to prove that the treatment Plaintiffs provided was covered under the member's Plan.

540. Plaintiffs appealed each one of the above claims, explaining that with the complete records attached to the appeal, Aetna should be able to adequately review and pay for Patient #35's medically necessary treatment.

541. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

542. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

543. As of May 22, 2024, Aetna has not sent Plaintiffs payments for any of the claims filed by Plaintiffs. The total remaining balance is $19,960.00.

**Patient #36**

544. Patient #36 was a member of a fully insured plan under Aetna.

545. Patient #36 was admitted to an APN facility on December 13, 2022, for residential addiction treatment (sub-acute detoxification: HCPCS code H0010) for their continuing struggles with substance abuse. On December 14, 2022, the patient received a new patient evaluation (CPT Code 99205).

546. They continued to receive residential addiction treatment (sub-acute detoxification: HCPCS code H0010) from December 13, 2022, until December 20, 2023.

547. Patient #36 then began receiving short-term residential behavioral health services (CPT code H0018) on December 20, 2022 and continued receiving short-term residential behavioral health services until January 19, 2023.

548. Patient #36 signed several FAs and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

549. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all

claims above. Aetna only provided Plaintiffs four vague denial rationales, throughout dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as comments to every EOB, with no further detail or explanation:

a. We've sent you a letter requesting the medical records for this patient. Once we receive the records, we will review this claim again. If we don't receive these records within 45 days of this statement date, we may need to deny the claim. You will have a right to appeal the denial at that time.
   The following does not apply to Federal plans:
   - For claims sent from NC: you have 90 days to send us the information. If we don't receive it, well deny the claim.
   - For claims sent from Texas: if we don't get the information, you claim may remain open. [F02]
b. This is a corrected or replacement claim. The corrected amounts show in each column. It may not show any payments the patient made. [RC2]
c. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
   - Patient's complete chart including daily notes by the attending physician
   - Medical and social history
   - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37] [ON6]
d. This is an interim charge, type XX3 or XX4. We can't apply the plans benefits until we receive a complete replacement claim, type XX7. Do not bill the member. We will show the member's responsibility on our final explanation of benefits. [NP3]
e. Coverage for these services has been denied due to failure to follow contractual notification requirements. The patient is not responsible for this amount. [K74]
f. We denied this service. We did not receive the details we asked for. You can refer to the prior EOB for these charges by logging into your secure provider portal. [PPND – V16]

550. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on January 12, 2023, and July 13, 20223, attached to appeals to prove that the treatment Plaintiffs provided was covered under the member's Plan.

551. Plaintiffs appealed each one of the above claims, explaining that with the complete records attached to the appeal, Aetna should be able to adequately review and pay for Patient #36's medically necessary treatment.

552. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

553. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

554. As of May 22, 2024, Aetna has sent Plaintiffs payments for four claims filed by Plaintiffs. The large majority of claims remain unpaid, with a total remaining balance of $150,335.00.

**Patient #37**

555. Patient #37 was a member of a fully insured plan under Aetna.

556. Patient #37 was admitted to an APN facility on April 27, 2023, for residential addiction treatment (sub-acute detoxification: HCPCS code H0010) for their continuing struggles with substance abuse. On April 28, 2023, the patient received a new patient evaluation (CPT Code 99205).

557. Patient #37 continued to receive residential addiction treatment (sub-acute detoxification: HCPCS code H0010) from April 27, 2023, until May 3, 2023.

558. Patient #37 then received short-term residential behavioral health services (CPT code H0018) from May 3, 2023, until June 2, 2023.

559. On May 6, 2023, this patient received a psychiatric diagnosis examination (CPT code 90792).

560. Patient #37 received family therapy (CPT code 90847) on May 19, 26, 31, June 22 and 29, July 26, August 2, 24, and September 1, and 7, 2023.

561. They received group therapy (CPT code 90853) on June 21 and 28 and on July 5, 12, and 19, 2023.

562. They also received psychotherapy (CPT code 90837) on June 23 and 30, on July 10, 14, and 21, and on August 4 and 11, 2023.

563. Patient #37 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs. In addition, Patient #37 signed an Aetna Authorized Representative Request form, which again established Plaintiffs as an Authorized Representative.

564. Plaintiffs submitted each of the claims listed above directly to Aetna. Even though the patient received varying treatments on different dates from Plaintiffs, Aetna denied all claims above. Aetna only provided Plaintiffs four vague denial rationales, throughout

dozens of explanation of benefits (EOB) reports. One of the following denial rationales was attached as a comment to every EOB, with no further detail or explanation:

a. These expenses require further review. After we have completed our review, we will process this claim. F85
b. This is denied. We do not have the information we need to consider this charge. In a prior communication to you, we requested specific information in order for us to complete our review. We need all treatment records, which should include:
    - Patient's complete chart including daily notes by the attending physician
    - Medical and social history
    - Daily treatment or progress notes

   Please redact any confidential information about the patient. If we receive the information within the timely filing requirements of the plan, we will complete our review. [S37] [ON6]
c. We paid for these for services in accordance with the Member's benefit plan. Allowed amount is standardly 50% of billed, however, depending on the Member's plan; the allowed amount can be up to 100%. [O51] [MM9] [ON6] The late claim interest/penalty charge is required by state regulations. A late claim interest/penalty charge has been applied and is included in the payment.
d. We denied this service. We did not receive the details we asked for. You can refer to the prior EOB for these charges by logging into your secure provider portal. [PPND – V16] [ON6]

565. Plaintiffs attempted to resolve the issues Aetna contended prevented coverage of these claims in several ways. First, Plaintiffs sent copies of this patient's medical records, as Aetna had requested, on July 20, 21, and October 16, 2023, as part of an appeal to prove that the treatment Plaintiffs provided was covered under the member's Plan.

566. Plaintiffs appealed each one of the above claims, explaining that with the complete records attached to the appeal, Aetna should be able to adequately review and pay for Patient #37's medically necessary treatment.

567. In the many months after these actions, Plaintiffs made multiple attempts to call Aetna representatives to inquire about the status of these unpaid claims. Plaintiffs were repeatedly told that Aetna had in fact, received the patient's medical records, but that

those records were never attached to the claim. Aetna representatives instructed Plaintiffs to wait until those records were combined with the claim by the Aetna claims department.

568. Plaintiffs exhausted all pre-litigation obligations under the terms of the Plan and retained the services of the law office of Brian S. King P.C. for assistance in the various denials received from Aetna for this patient.

569. As of May 22, 2024, Aetna has sent Plaintiffs payments for twenty-six claims. The majority of claims filed remain unpaid, with a total remaining balance of $131,870.00.

**Patient #39 and 40**

570. As of May 22, 2024, Aetna has reversed its repeated denials and paid the full claims balance for  Patient #39 and Patient #40.

571. Patients #39 was a member of a fully insured plan under Aetna at all relevant times.

572. Patient #39 signed an AOB form during their treatment dates. This document authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

573. Patient #40 was a member of the self-funded Open Choice with Aetna Healthfund Plan, with claims administered with Aetna.

574. Patient #40 signed a FA and an AOB form during their treatment dates. These documents authorized Plaintiffs to act as an Authorized Representative, authorized release of the patient's information to Aetna, and assigned payment of any insurance benefits for the claims directly to Plaintiffs.

575. In addition, Patient #40 signed an Aetna Authorized Representative Request form, again establishing Plaintiffs as an Authorized Representative.

576. On December 14, 2022, Plaintiffs received a letter from Aetna which cited "concerns with claims you submitted for reimbursement." The letter directed Plaintiff to attach the patients' complete charts along with their medical and social history and any daily treatment or progress notes with each reimbursement request. A copy of the December 14, 2022, letter is attached to Plaintiffs' Second Amended Complaint as **Exhibit A.**

577. The letter did not acknowledge that prior to the receipt of the December 14, 2022, letter, Plaintiffs had repeatedly done just that, only to be repeatedly ignored by Aetna in every instance.

578. Plaintiffs made numerous inquiries to Aetna to clarify what information was allegedly absent. However, at no time in this process did Aetna provide further information about which, if any, documentation was missing from any specific claim, nor did Aetna make any attempt to clarify how Plaintiffs' previous attempts to produce documentation was deficient, if indeed it was in any way.

579. Plaintiffs repeatedly contacted Aetna to obtain more information about why the claims were being denied. In email correspondence, Aetna offered varying justifications for denying payment. For instance, Aetna stated in emails that it would need to see qualifications for staff to verify whether treatment could be approved.

580. Plaintiffs questioned Aetna as to why this had never been communicated in any actual denial correspondence and why if this was true, had Aetna only asked for medical records. Plaintiffs submitted the qualifications of its staff and was then told by Aetna that

for Plaintiffs to be taken off special review status, they would need to submit six months of "clean claims" with no identifiable issues.

581. When Plaintiffs repeated that the denials they had received were for an alleged lack of clinical records and asked multiple times how its claims were not "clean," or how Plaintiffs could correct any alleged deficiencies, Aetna refused to clarify why it was denying claims and directed Plaintiffs to contact the appeals department and conduct an appeal for each of the denied claims, all while declining to elaborate on why the claims were denied in the first place.

582. Between December 2022 and September 2023, Plaintiffs continued to serve patients insured under Aetna plans, without receiving anything more than nominal payment from Aetna.

583. In September, 2023, Plaintiffs retained the services of the law office of Brian S. King P.C. ("Counsel") for assistance in appealing the various denials received from Aetna.

584. On October 26, 2023, Counsel sent a letter to David Erickson at the Aetna Special Investigations Unit regarding a series of denials for forty-two individuals who received care from Plaintiffs in the prior months. Counsel wrote that Plaintiffs had gone to great lengths to resolve the denial of payment for these individuals' medically necessary treatment, but Plaintiffs' efforts had so far been fruitless. A copy of the October 26, 2023, letter is attached to Plaintiffs' Second Amended Complaint as **Exhibit B**.

585. Counsel stated that they were making one final attempt on Plaintiffs' behalf to resolve these issues and exchange information and documents to resolve the problems with Aetna.

586. Counsel wrote that Plaintiffs were a licensed residential mental health and addiction treatment center located in Edwards, Colorado, and was accredited by The Joint Commission, as well as the Commission on Accreditation of Rehabilitation Facilities. Counsel stated that Plaintiffs had well qualified and experienced staff members which included the former CEO of United Behavioral Health, and the former Deputy Director of the Office of National Drug Control Policy.

587. Counsel stated that in an assessment by the ACORN Collaboration, a nonprofit measuring clinical outcomes across three thousand providers, Plaintiffs were found to be one of the top care providers available worldwide.

588. Counsel noted that despite this pedigree, Aetna repeatedly denied payment for individuals receiving services in APN programs. Counsel wrote that Aetna's primary pattern for denying payment was to claim that each patient was missing treatment records.

589. When Plaintiffs responded by sending complete copies of the patients' medical records along with any other relevant documentation, Aetna maintained the denials on the same grounds, often repeating requests for records which Plaintiffs had just produced.

590. Counsel stated that when Plaintiffs attempted to resolve this issue and inform Aetna that it had already provided the necessary information, Aetna continued to deny payment on the same basis and continually evaded providing any concrete answers by employing "run-around" tactics such as asking Plaintiffs to talk to yet another individual or another department in the company. Plaintiffs' requests for clarification were repeatedly stonewalled and ignored.

591. Counsel contended that because Aetna's denials "are transparently without validity" and because it refused to respond to Plaintiffs' repeated inquiries regarding what, if any, documentation was missing, Aetna had internally classified Plaintiffs as a facility for which it would deny all claims regardless of validity.

592. Counsel pointed out that Aetna was a fiduciary under each and all the individual members' ERISA insurance plans and was required to act in that capacity for its members and to provide them with the benefits they were owed.

593. Counsel wrote that each of the claims had a payment denial which cited nearly identical reasons and disregarded any documentation provided to remedy the issue. In addition, counsel pointed out that in many cases, Aetna provided denial letters later than allowed by ERISA. Counsel asserted that Aetna systematically failed to comply with its ERISA obligations to perform a full, fair, and thorough review of each individual claim.

594. Counsel produced a table as a representative sample which summarized the denial process for ten of the forty-two individuals. The selected denial letters share a common theme of Aetna asserting that it lacked information needed to process the claim, such as the patient's complete chart, or daily treatment or progress notes.

595. Even after receiving this information, Aetna continued to assert that "[w]e do not have the information we need to consider this charge." Aetna then repeated that it was missing information such as the patient's complete chart and daily notes, even though Plaintiffs had repeatedly produced those documents.

596. In some rare cases, Aetna expanded its denial rationale and included statements that did not reference missing documentation, such as, "[t]hese expenses require further review"

or an assertion that the services were not covered by the member's plan, or even that "these services were not provided." But in nearly all cases, Aetna simply reiterated that it did not have the required information, regardless of how many times such documentation had been previously provided.

597. Counsel stated that the total benefits amount for these forty-two patients constituted an amount greater than five and a half million dollars ($5,500,000).

598. Counsel reminded Aetna that it had clear and explicit obligations under ERISA to provide, among other things:

> (1) "(t)he specific reason or reasons for the adverse determination:"
> (2) "(r)eference to the specific plan provisions on which the determination is based:"
> (3) "(a) description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary:" and
> (4) for denials based on lack of medical necessity, "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances.

599. Counsel noted that Aetna was further required to:

> (1) "take(s) in account all comments, documents, records, and other information submitted by the claimant related to the claim:"
> (2) provide "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits(;)" and
> (3) in deciding an appeal based on medical necessity, demonstrate that the claims administrator "consult(ed) with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment."

600. Counsel contended that Aetna had failed to abide by these minimum obligations and had abused its discretion by applying "cursory and conclusory rationales for denial" in a way

that systematically deprived its insureds receiving care at APN facilities of the meaningful dialogue and full and fair review to which they were entitled.

601. Counsel wrote that Plaintiffs were the only provider offering the level of services and treatment that many individuals with elevated mental health and substance use disorder treatment needs required.

602. Counsel contended that by artificially imposing limitations on treatment at APN facilities, Aetna appeared to be imposing limitations on network adequacy for mental health care services in violation of MHPAEA.

603. To assess Aetna's level of MHPAEA compliance, Counsel asked Aetna to perform a parity analysis on each of the forty-two disputed plans, and also asked for documentation such as the summary plan description and governing plan documents for each respective plan so that Counsel could conduct their own MHPAEA compliance assessment.

604. Aetna ignored this request.

605. Counsel asked Aetna to disclose its true justification for denying Plaintiffs' claims and stated that Plaintiffs were unable to appeal any benefit denials effectively without this information.

606. Counsel expressed concern that the patients had their treatment at APN facilities denied without "any sort of principled process" or compliance with minimum ERISA requirements.

607. Following this letter, Plaintiffs informed Counsel that Aetna appeared to have removed Plaintiffs' status of requiring special review for each claim submission.

608. Counsel then reached out to David Erickson at Aetna to confirm whether this was true, and if so when the hold was lifted. Counsel also asked for information concerning the claims for the forty-two individuals identified in the October 26, 2023, letter.

609. David Erickson stated that he would forward Counsel's request to Aetna's legal department for review. Counsel reached out again nine days later stating they had received no response from Aetna, and Mr. Erickson again replied by saying he would forward these communications to Aetna's legal department for review.

610. Counsel received no substantive response to their email or October 26, 2023, letter from the legal department or anyone else at Aetna.

611. Plaintiffs have exhausted their pre-litigation appeal obligations under ERISA and the terms of the respective ERISA plans to obtain payment of the benefits owed under the terms of the respective ERISA plans for the forty-two patients.

## FIRST CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

612. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Aetna, acting as an agent of ERISA insurance plans for which it provides coverage and administrative services, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of those plans. 29 U.S.C. §1104(a)(1).

613. Aetna denied coverage for at least forty-two individuals receiving care from Plaintiffs at APN facilities under the justification that various documentation was absent.

614. Even after this documentation was provided, in some cases on multiple occasions, Aetna

upheld the denial of payment in violation of the express terms of the various insurance plans, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders and allow coverage for facilities such as APN.

615. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

616. Aetna declined to engage in a meaningful dialogue and refused to explain or alter its justification for the denial of payment, even when it had no basis to deny on those grounds. Aetna ignored multiple attempts by Plaintiffs, even after they engaged Counsel to assist, requesting that Aetna clarify its position. Aetna has refused to offer any indication that it intends to correct the claims which it has improperly denied.

617. Aetna breached its fiduciary duties to its insureds when it failed to comply with its obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in its members' interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of denied claims.

618. By extension, Aetna's actions have caused significant monetary harm to Plaintiffs by systematically withholding funds for services while obstinately refusing to justify its actions.

619. The actions of Aetna in failing to provide coverage for medically necessary treatment

rendered by Plaintiffs are a violation of Aetna's duties as insurer and third-party administrator of the various welfare benefit plans for which it offers, or purports to offer, coverage for treatment at APN facilities.

**SECOND CAUSE OF ACTION**

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))**

620. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Aetna's fiduciary duties.

621. By extension, any individual receiving treatment at an APN facility with an ERISA plan insured or administered by Aetna is also entitled to the protections MHPAEA provides.

622. MHPAEA requires Aetna to provide no less generous coverage for treatment of mental health and substance use disorders than it provides for treatment of medical/surgical disorders.

623. MHPAEA prohibits Aetna from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

624. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location,

facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

625. Comparable benefits offered by Aetna for medical/surgical treatment analogous to the benefits offered at APN facilities include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

626. Aetna evaluated the claims for the forty-two patients for which one or more of Plaintiffs hold assignments of benefits and for which they have the authority to act as representatives in the pre-litigation appeal process and litigation process in violation of the terms of the respective ERISA plans and ERISA's claims procedure criteria.

627. Aetna has targeted Plaintiffs' claims for exclusion due to the cost of the services Plaintiffs provide and to reduce the payments Aetna, either in its capacity as insurer or third-party administrator, makes for Plaintiffs' services.

628. When Aetna receives claims for intermediate level treatment of medical and surgical conditions, it provides benefits and pays the claims as required by the terms of the insurance plans for which it provides coverage and in accordance with the fiduciary duty and claims procedure requirements of ERISA.

629. Aetna does not exclude payment for the medical services provided at licensed and accredited skilled nursing, inpatient rehabilitation, and inpatient hospice facilities without cause in the same way it has denied payment for the services Plaintiffs provide.

630. This process resulted in a disparity because Aetna denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

631. In addition, without any factual or legal basis, Aetna informed Plaintiffs that its facilities had been placed on special status requiring a heightened level of review for every claim submitted by participants and beneficiaries receiving services at APN facilities.

632. Plaintiffs reached out to Aetna on several occasions and stated that it had provided all necessary information and documentation required by Aetna to obtain payment for the Plaintiffs' claims and inquired what, if any, additional information or documentation was necessary for Aetna to process the claims. Aetna was unwilling or unable to identify any actual deficiencies in the materials Plaintiffs provided.

633. Aetna has put into place undisclosed requirements to restrict the availability of coverage for residential treatment care which it has used specifically to restrict the ability of its insureds to obtain coverage for mental health and substance use disorder treatment at APN facilities.

634. Counsel asked Aetna to provide it with evidence of any MHPAEA compliance analysis which had been done with respect to the relevant plans, Aetna refused and failed to do so. Counsel also asked Aetna to provide it with documentation for Counsel to conduct its own MHPAEA analysis. Aetna again refused and failed to do so.

635. Aetna does not restrict access to coverage or impose equivalent treatment limitations on coverage analogous medical/surgical treatment provided at skilled nursing, inpatient rehabilitation, and inpatient hospice facilities in violation of the terms of the relevant ERISA plan, nor does it deny comparable medical/surgical claims in a manner that violates ERISA's fiduciary duty and claims procedure requirements.

636. Aetna's actions also provide less coverage for participants and beneficiaries being treated for mental health and substance use disorders from Plaintiffs than the coverage it provides for participants and beneficiaries being treated for medical and surgical conditions in analogous levels of care such as treatment in skilled nursing, inpatient rehabilitation, and inpatient hospice facilities.

637. The effect of Aetna's action is to discriminate against participants and beneficiaries by improperly denying payment for residential treatment at APN facilities providing mental health and substance use disorder treatment and imposing more restrictive treatment limitations for benefits than the benefit payments Aetna provides for comparable medical and surgical treatment.

638. In this manner, Aetna violates MHPAEA and its underlying regulation, 29 C.F.R. §2590.712(c)(4)(i), because it utilizes processes, strategies, evidentiary standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

639. The violations of MHPAEA by Aetna are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

a. A declaration that Aetna's actions violate MHPAEA;

b. An injunction ordering Aetna to cease violating MHPAEA and requiring compliance with the statute;

c. An order requiring the reformation of the Aetna's internal processes and practices to ensure compliance with MHPAEA;

d. An order requiring disgorgement of funds obtained by or retained by Aetna as a result of its violations of MHPAEA;

e. An order requiring an accounting by Aetna of the funds wrongly withheld from ERISA participants and beneficiaries as a result of Aetna's violations of MHPAEA;

f. An order based on the equitable remedy of surcharge requiring Aetna to provide payment to Plaintiffs as make-whole relief for Plaintiffs' losses;

g. An order equitably estopping Aetna from denying Plaintiffs' claims in violation of MHPAEA; and

h. An order providing restitution from Aetna to Plaintiffs for Plaintiffs' losses arising out of the Aetna's violation of MHPAEA.

i. In addition, Plaintiffs are entitled to an award of prejudgment interest and attorney fees and costs pursuant to 29 U.S.C. §1132(g). It is important to note that since Plaintiffs have filed their original complaint, Plaintiffs have begun to receive small payments from Aetna for some of the patients listed above. Aetna has reversed their previous denials, and paid for the full balance of Patient #39 and 40's remaining balance, as of May 22, 2024. However, pre-judgment interest is owed to Plaintiffs on all patients through the date of payment in full. Aetna should not be allowed to continue holding these large payments hostage from Plaintiffs

for months, and in some cases, years, with no explanation or communication to Plaintiffs.

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for the treatment provided by Plaintiffs to the participants and beneficiaries of the Aetna insured and administered ERISA welfare benefits plans for which one or more of Plaintiffs, as applicable, hold assignments of benefits and for which Aetna has improperly denied coverage, plus pre and post-judgment interest to the date of payment for each claim improperly denied by Aetna,
2. An order enjoining Aetna from denying future claims by Plaintiffs in the same wrongful manner;
3. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) for the Defendants' breaches of fiduciary duty and as outlined in Plaintiffs' Second Cause of Action;
4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and
5. For such further relief as the Court deems just and proper.

DATED this 23rd day of September, 2025.

*s/Sarah J. Baker*
Sarah J. Baker, #32806
**SARAH J. BAKER, P.C.**
Post Office Box 4551
Eagle, Colorado 81631
Telephone: (970) 331-0799
sbaker@sbakerpc.com

s/ *Brian S. King*

Brian S. King, #4610
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com